## THE CHOUTEAU SPRING COMPANY, Respondent, *vs.* HARRIS, Appellant.

The charter of an incorporated company provided that the stock might be "transferred on the books of the company." The company was authorized "to regulate the transfer of stock" by by-laws. A provision in the charter authorized the company, in certain cases, to make assessments on "*stockholders*," beyond their shares of stock. *Held:*

Chouteau Spring Co. *v.* Harris.

1. That no such assessment could be made on a party after he had ceased to be a member, by a transfer of his stock.
2. That the power " to regulate the transfer" did not include the power to *restrain* transfers or prescribe to whom they might be made, but merely to prescribe the formalities to be observed in making them; and that the company could not prevent a party from selling his stock even to an insolvent person.
3. That an assignment "upon the books of the company" was sufficient to effect a change of ownership, without taking out a new certificate in the name of the assignee; and that any transfer in writing was valid against the company, if, being notified, they refused to allow it to be made according to their by-laws.

## *Appeal from Cooper Circuit Court.*

This was an action commenced before a justice of the peace to recover the amount of an assessment made against Harris as a stockholder in the Chouteau Spring company, under the 12th section of their charter. (Sess. Acts, 1849, p. 168.)

At the trial in the Circuit Court, upon appeal, it appeared in evidence that in August, 1851, Marcus Williams assigned nine shares of stock to the defendant, on the books of the company, and the treasurer issued a new stock certificate to the defendant. Afterwards, in October, 1852, the company being indebted to an amount exceeding their corporate property, a meeting was called and an assessment made upon the stockholders to pay off a portion of the debt.

Several months before this meeting was held, defendant came into the office, and wrote on the books of the company an assignment of his stock to William J. Pettit. Some days afterwards, defendant went to the office with Pettit, produced his stock certificate, and requested the treasurer to cancel it, and issue another to Pettit. The treasurer refused to do this, assigning as a reason that the company was in debt beyond its assets and Pettit was insolvent. It was in evidence that there were other instances where the treasurer had refused to allow members to transfer their stock to insolvent persons. The certificate had upon its face the words " transferable only on the books of the company in person or by attorney."

The defendant read in evidence an assignment to Pettit, written on a separate piece of paper, and dated June 22, 1852. He also read the charter and by-laws of the company. The tenth section of the charter is as follows :

§10. The stock of said company shall be deemed personal property, and may be transferred on the books of said company; and transfers of certificates of stock may be made in such manner as the company may by by law direct.

The twelfth section authorizes the company to make assessments " on stockholders" for raising funds required by the company for purposes of improvement or purchasing lands; provided that all assessments shall be equal, and never exceed in any one year fifty per cent. upon each share.

The by-laws of the company contained no provision whatever in relation to transfers of stock.

The court instructed the jury to find for the plaintiff, if the defendant was the owner of the stock when the assessment was made, and then instructed them that there was no legal evidence that he was not the owner. All the instructions asked by the defendant were refused, and there was a verdict and judgment for the plaintiff.

*Gardenhire* and *Draffin*, for appellant. 1. The defendant had a right to sell and transfer his stock upon the books of the company, and a court would compel the treasurer to issue a certificate to the assignee. (8 Pick. 90. 16 Mass. Rep. 94. Ang. & Ames on Corp. p. 436–37, §1, and p. 439, §3.) 2. The defendant was not liable to be sued by the company for an assessment made three months' after he had transferred his stock to Pettit. (7 Term Rep. 36. Ang. & Ames, 426–7, §8.) 3. The company can only assess stockholders, and not those who have ceased to be stockholders. (Acts of 1849, p. 170, §12.)

*J. W. Morrow*, for respondent, argued that it was a fraud upon the other members and the creditors of the corporation for a stockholder to transfer his stock to an insolvent person, for the purpose of escaping liability to an assessment for

debts created for the purposes named in the twelfth section of the charter.

*Hayden & Stephens*, on the same side, insisted in their brief that the evidence and. the instructions in relation to a transfer of the stock before the assessment were wholly immaterial ; that the only question was, whether the *debt*, to pay which the assessment was made, was contracted during the defendant's ownership of the stock or not ; and that, as this was not denied, the defendant had no right to complain, and the judgment ought not to be disturbed.

LEONARD, Judge, delivered the opinion of the court.

The question here is, in relation to the correctness of the direction given by the Circuit Court to the jury. The suit was to recover an assessment made on the defendant as a stockholder, pursuant to the twelfth section of the charter, (Sess. Acts, 1849, p. 168,) and the matter litigated at the trial, whether the defendant had so parted with his stock before the assessment as to relieve him from personal responsibility.

It seems to have been assumed in the Circuit Court, that the company's right to recover depended on the fact that the defendant was the owner of the stock at the time the assessment was made, and although it has been argued otherwise here in one of the briefs, we can see no other ground on which the recovery can stand. The power to make the assessment is derived exclusively from the charter, and has that extent and no other which is there given to it. The words of the charter are : " The company shall have power to make an assessment upon such stockholders, for raising funds required by the company for purposes of improvement or purchasing lands, in such amount as they may deem proper ; provided, however, that all assessments shall be equal, and never exceed in any one year fifty per cent. on each share."

1. Of course, the legislature never contemplated giving this company power to govern any except its own members, and the authority to levy assessments is therefore confined to stock-

holders, and is expressly limited to fifty per cent. a year on each share. Any other construction would be unreasonable and could not be admitted. In this, as in most joint stock companies, member and stockholder are convertible terms—a person cannot be one without also being the other. In the *Overseers of the Poor, of Boston*, against *Sears*, (22 Pick. 131,) Shaw, Chief Justice, says: "In all *quasi* corporations, as cities, towns, parishes, school districts, membership is constituted by living within certain limits. In all bridge, railroad, and turnpike companies, and generally in all corporations having a capital stock and looking to profit, membership is constituted by a transfer according to the by-laws, without any election on the part of the corporation itself. In some, the assent of the corporation is made necessary to such transfer and consequent ownership."

It is clear that, under this charter, an assessment can only be laid upon one who is a stockowner at the time ; nor is there any hardship in this, either to the corporate creditors or to the individual members of the company. This is not a private joint stock company, where there is a personal responsibility upon all the partners for all the debts, without any limit, and a mutual responsibility to each other to contribute to the common burthens, from which none can escape by selling out ; but a corporation, the distinguishing feature of which is the personal irresponsibility of its members for the company debts beyond their shares of stock, and the individual responsibility provided by statute against the members, in case of insolvency, to double the amount of each member's stock, for debts contracted during his ownership. The credit, in the one case, is given to the individuals composing the association ; in the other, to the corporation, on the faith of its corporate property, and this special statute personal responsibility. Certainly it was most honorable in the members of this company that, instead of abandoning the concern as insolvent to its creditors; to make what they could out of it, they voluntarily imposed an assessment upon themselves to discharge this indebtedness ; but this court cannot, for

that reason, or for any purpose, no matter how laudable, disregard the plain law of the land, and subject to this assessment those over whom the company had no authority.

2. Returning, then, to the only question in the case, whether there was any evidence that the defendant had parted with his stock before the assessment was made, the jury were told that there was no such evidence, and the questions discussed at the trial, in order to settle this matter, seem to have been, whether the company could prevent a transfer of stock, by withholding its consent on account of the insolvency of the assignee, and if they could not, whether the present transfer was made with the necessary formalities to effect a change of ownership.

There was evidence that the defendant had made a written assignment of his stock to Mr. Pettit, on a separate paper; that the parties afterwards went to the company's office, where the defendant wrote an assignment on the stock transfer book of the company, handed to him by the company's officer; that a few days after this, the parties went again to cancel the old certificate, and take out a new one in the name of the assignee, which the officer refused, on the alleged ground that the company was in debt beyond its means, and the assignee insolvent. It was also in evidence that no by-law had ever been made regulating the transfer of stock, although the certificates bore on their face the words, "transferable on the books of the company;" that the assignee was insolvent, and that the company's officer had, on previous occasions, refused to recognize the validity of assignments to insolvent persons.

Stock, in incorporated joint stock companies like the present, is always treated as property, without any declaration in the charter to that effect; and when such a provision is inserted, it is considered as merely cumulative, except so far as it designates the peculiar character of the property, whether real or personal. One of the incidents of property is its transferability, our idea of property, dominion over a thing, including in it the power of disposing of it at pleasure; and, of course, the power of disposing of this stock, like the power of dispo-

sing of any other property, is incident of common right to the ownership of it ; and the words in the charter, " transferable on the books of the company," are treated as merely cumulative, pointing out one mode of transfer, but not excluding other modes, where no exclusive words are used. The legislature may grant corporate power to restrain this transferability, but unless it is expressly given, it does not exist ; and in favor of the power of disposing, the courts generally construe clauses affecting this right with a view to the particular purpose for which they are inserted, and give them effect to that extent only. ( *Bank of Utica* v. *Smally*, 2 Cow. Rep. 712. *Quiner* v. *Marblehead Soc. Ins. Co.*, 10 Mass. 476. )

We remark here that the power of regulating the transfer of stock is, at least under our laws, (R. C. 1845, tit. " Corporations," art. 1, sec. 1,) incident of common right to every corporation ; and although the power in the present charter is expressed in language somewhat different from that used in the general act, it must receive the same construction. This power, however, of regulating transfers of stock, confers no corporate authority to control its transferability by prescribing to whom the owner may sell, and to whom not, or upon what terms. The truth is, the provision is considered as being intended exclusively for the benefit of the company, in order that they may, by proper regulations, provide themselves with the means of knowing who they are bound to treat as members liable to assessment and entitled to vote at corporate meetings and to receive dividends, and it is construed accordingly, the corporation being left to exercise the power or not, at its own pleasure, as being alone interested in the matter.

If any authority is needed in support of what is here said, we may refer to two cases—one in Massachusetts, (*Sargent et al.*, v. *Franklin Ins. Co.*, 8 Pick. 90,) and the other in New York, (*Bates* v. *New York Ins. Co.*, 3 John. Cases, 238.) These are cases against the companies by the assignees of stock assigned, but not allowed by the companies to be entered upon their books, and the doctrine laid down is, that although

the company have the power of regulating the transfer of stock, by prescribing the mode in which it shall be made, the transfer is valid as against the company, if they have notice of it and refuse to allow it the necessary formalities; and that they cannot withhold these formalities upon the ground that the assignor is in debt to the company. In the Massachusetts case, a general power to regulate this matter was given in the charter, and the New York company exercised the power under the general law, which, in this particular, is believed to be the same as our own. In the case in Pickering, to which we have referred, the court, in reference to the objection that the assignors of the stock were indebted to the company, and that therefore the company was not obliged to admit a transfer of their shares until their debt was paid, say: "We do not know on what ground that argument can rest, better than that which is suggested, that the assent of the president is to be required to prevent transfers which are injurious to the corporation, and that a power of assenting implies a power of refusing. No authority is cited in support of that position. In *Bates* v. *New York Ins. Co.*, (3 John. Cas. 238,) a similar claim was rejected. The company refused, unless the assignee would pay the debts due from the assignor, and the assignee, who paid under those circumstances, was permitted to recover back the money, on the ground that the corporation had no right to require such payment." In another part of the opinion, the court say : "A by-law which limits the transfer of the stock to be made only at the office personally, or by attorney, and with the assent of the president, would be in restraint of trade, and contrary to the general law of the commonwealth, which permits the right to personal property and incorporeal hereditaments to be transferred in various other ways. The purchaser or other person entitled should make his right known to the corporation, that it may be entered upon their books, to the end that they may have proper evidence to whom the dividends or profits should be paid."

Upon a sale of stock under our execution laws, (R. C. 1845,

tit. "Execution," secs. 14 and 48,) it is the duty of the officer to give notice to the company of the sale, and it is then as complete against the company as if clothed with the required formality prescribed by the by-laws.

3. The other matter which seems to have been considered in the Circuit Court, whether the assignment was sufficient to effect a change of ownership without taking out a new certificate in the name of the assignee, is settled by what has been already said. By the very words of the charter, the stock is " transferable on the books of the company," and even if the words are to be construed as excluding all other modes of effecting a complete transfer, the mode prescribed by the act must be sufficient, without any additional formality, and there was proof to go to the jury of such a transfer. But we do not wish to be understood as putting the case upon this narrow ground. An assignment in writing is sufficient between the parties ; and if it be notified to the company, and they will not allow it to be made according to their by-laws, it is as valid against them as if the required formalities had been observed, the courts acting on the principle, as between these parties, of considering that done which ought to have been done, and settling the rights of the parties accordingly.

We remark, in conclusion, that a stockholder cannot, by selling out against the company's consent, escape from his responsibility to the company for the unpaid purchase money of stock taken ; nor can a member of a company, by a fraudulent conveyance, avoid his statute liability to the corporate creditors for debts contracted during his real ownership. These are matters not involved in this record, and left untouched by this opinion.

The result is, the Circuit Court misdirected the jury as to the law applicable to the case, and the judgment must be reversed, and the cause remanded for a new trial ; and the other judges concurring, it is ordered accordingly.