No. 19,512.

ART S. STEELE, *Plaintiff*, v. THE FARMERS & MERCHANTS MUTUAL TELEPHONE ASSOCIATION et al., *Defendants.*

SYLLABUS BY THE COURT.

1. PRIVATE CORPORATIONS — *By-Laws Restricting Transfer of Stock Invalid—Mandamus.* By-laws of a private corporation organized under the provisions of chapter 23 of the General Statutes of 1909 (§§ 1695-1936), which require election to membership in the corporation by the board of directors before a transfer of stock will be registered, or which require a stockholder to offer his stock to the corporation at not to exceed par before selling elsewhere, or which otherwise impair the right to dispose of shares of stock as personal property, except that all previous assessments must be paid and the transfer must be made on the books of the corporation according to such reasonable formalities as may be prescribed, are void, considered either as by-laws of the corporation or as contracts with stockholders.

2. SAME—*Corporations—Purchasing Their Own Capital Stock.* The statutes of this state forbid private corporations organized under the statute referred to to purchase their own capital stock unless necessary to obtain or secure payment of debts or dues owing the corporation.

Original proceeding in mandamus. Opinion filed May 8, 1915. Writ allowed.

*John L. Hunt,* of Topeka, for the plaintiff.
*L. H. Wilder,* of Norton, for the defendants.

Steele v. Telephone Association.

The opinion of the court was delivered by

BURCH, J.: The action is one to compel by writ of mandamus the transfer to the plaintiff of shares of stock of the Farmers and Merchants Mutual Telephone Company on the books of the corporation.

The telephone company was organized under the general corporation law to do a general telephone business. The amount of its capital stock is $33,000, divided into shares of $35 each, about 800 of which have been issued. The plaintiff holds 225 certificates for one share each, issued to stockholders and assigned to the plaintiff by formal assignment in writing indorsed on the back of each certificate. The certificates have been duly presented for transfer and transfer has been refused.

It appears that subsequent to the organization of the corporation an effort was made to convert it into a sort of coöperative concern by the adoption of what was called a "constitution and by-laws," such as voluntary unincorporated societies are in the habit of using. Among the provisions of this instrument are the following:

"SEC. 11. Any person may become a member of this Association by paying to the Treasurer $45 to pay for one share of stock, provided, that said amount is sufficient to extend the line to his or her residence; provided also, that said person shall be elected by the Board of Trustees as a member.

"SEC. 12. Members of this Association shall be allowed more than one share, but shall have but one vote only for all the shares he may own. He shall not be allowed to sell his shares of stock until after he has offered it for sale to the company at a price not to exceed the original cost of the share. Any stock so purchased by the company shall be held as common stock of the company, and can be sold to any person or stockholder.

"SEC. 13. Any member of this Association who shall sell his or her residence shall have the right to sell their membership, and the person buying the same shall have

all the rights and privileges and shall bear his equal share of expenses the same as the original member; provided, that said purchaser shall be accepted by the Board of Trustees as a member. If not, the money shall be refunded."

The refusal to transfer the plaintiff's shares on the books of the corporation is based on noncompliance with the foregoing rules. While the plaintiff offered the stock to the corporation, the members who assigned to him did not do so; the plaintiff neither paid nor offered to pay to the treasurer the price of a membership in the association; the plaintiff pays and has paid no telephone rent and has never contributed anything to the support or expenses of the association; and the plaintiff has never been elected or accepted as a member of the association by the board of trustees. The plaintiff contends that section 11, 12, and 13 of the constitution are void.

The adoption of the so-called constitution of the association by the stockholders can have no effect as an exercise of corporate power unless under the statute authorizing the adoption of by-laws. Under the statutes of this state stockholders have no general power to adopt by-laws. That function belongs to the board of directors, who have the general management of the affairs of the corporation. (Gen. Stat. 1909, § 1741.) Stockholders merely have power to alter or amend by-laws promulgated by the board of directors, at a stockholders meeting ordered for that special purpose. (§ 1737.) The corporate power to adopt by-laws is limited to the government of the corporation, the management of its property, the regulation of its affairs, and the transfer of its stock, as the corporation may be constituted under the law, and not to the constitution and membership of the corporation itself. (§§ 1722, 1737.) Stock in a corporation is personal property (§ 1743) which may be seized and sold on execution, may be devised by will, passes to executors and administrators, and may be distributed to heirs. While it is

transferable only on the books of the corporation according to such reasonable formalities as may be prescribed, it is transferable there to any one holding lawful title. The power to adopt by-laws regulating transfers is intended to promote convenience and certainty as to membership. It can not be employed to embarrass transfers or curtail property rights, and the provisions of the defendant's constitution making election to membership or acceptance of a member by the board of directors a condition of transfer are void.

The provisions of the defendant's constitution forbidding a stockholder to sell his stock unless he first offers it for sale to the company itself at not to exceed par, and otherwise impairing property right and obstructing registry, are likewise void. The legislature considered the subject of restrictions on the alienation of shares of stock, and permitted just two—full payment of previous assessments and transfer on the books of the corporation. (Gen. Stat. 1909, § 1743.) Aside from these restrictions, shares of stock are personal estate vendible at will, and the corporation possesses no franchise to impose other conditions or disqualifications.

It is argued that by-laws affixing restraints upon the disposal of shares of stock by their owners ought to be permitted to insure harmonious membership and to prevent corporate turmoil. Harmony secured in this way may be as vicious as corporate turmoil. But the fatal defect in the argument is that it ignores the fundamental principle of corporate composition.

In the case of *Morgan v. Struthers,* 131 U. S. 246, the court said:

"One essential feature of an incorporated joint stock company is the right of each stockholder, without restraint, to sell or transfer his shares at pleasure. (Thompson, Liability of Stockholders, § 210, and cases there cited.) So well established is this right that a by-law of a bank putting restrictions upon the transferability of stock in the hands of its members has been held void as being in restraint of trade. (*Moore v.*

*Bank of Commerce*, 52 Mo. 377.) Even where the charter gives the corporation the power to regulate transfer of stocks, it has been held that this power does not include the authority to restrain transfers. (*Chouteau Spring Co. v. Harris*, 20 Mo. 382, citing *Quiner v. Marblehead Social Insurance Company*, 10 Mass. 476, and numerous other authorities.) . . . It is just in this respect, especially, that an incorporated joint stock company differs from an ordinary copartnership. In the latter, the individual members of the firm are presumed to, and in general actually do, contribute to the common enterprise, not only their several shares of partnership capital, but also their individual experience, skill or credit, no member having the right to sell out his interest or to retire from the firm without the consent of the copartners; and if he does either, the act amounts to a dissolution of the partnership. (Parsons on Partnership, § 171.) The very reverse, as we have said, is the case of a joint stock corporation, in which each stockholder, whether by purchase or original subscription, has the right, unless restrained by the charter or articles of association, to sell and transfer his shares, and, by transferring them, introduce others in their stead." (pp. 252, 253.)

In Massachusetts, followed by Ohio, the theory has been evolved that by-laws fettering the right to dispose of corporate stock may be void as exhibitions of corporate power but valid as agreements between the corporation and the stockholder. (*New England Trust Co. v. Abbott*, 162 Mass. 148, 38 N. E. 432; *Barrett v. King*, 181 Mass. 476, 63 N. E. 934; *Nicholson v. Brewing Co.*, 82 Ohio St. 94, 91 N. E. 991.)

In this state corporate power to make contracts is granted in the following terms:

"Every corporation, as such, shall have power: . . . (7) To enter into any obligation or contract essential to the transaction of its ordinary affairs." (Gen. Stat. 1909, § 1722.)

The sale of his stock by a stockholder of a corporation is not an affair of the corporation at all, except as already indicated, and a contract of the corporation with

its stockholders creating the right to limit future ownership of stock and future membership in the corporation is as much beyond the power of the board of directors as a by-law to the same effect. The function of the board of directors or trustees is to manage the business of the corporation. The law determines who may compose the corporation.

The prevailing view is that by-laws of the character of those under consideration accomplish no lawful purpose. In 2 Cook on Corporations, 7th ed., § 408, it is said:

"The law has uniformly and decisively discountenanced and overruled all attempts of a corporation to prevent the sale and transfer of its stock by the stockholder. Such attempted restrictions are generally made by means of by-laws. Thus, a by-law requiring the consent of the directors or other corporate officers to a transfer, or a by-law requiring the stockholder, when he sells, to sell his stock to specified persons, is null and void. Restrictions may be created by a contract mutually agreed to by the stockholders, but can not be imposed upon them by a majority of the stockholders nor by the board of directors."

The following cases are illustrative: *McNulta v. Corn Belt Bank*, 164 Ill. 427, 45 N. E. 954; *The Farmers' and Merchants' Bank of Lineville v. Wasson*, 48 Iowa, 336, 340; *Bloede Co. v. Bloede*, 84 Md. 129, 34 Atl. 1127; *Chouteau Spring Co. v. Harris,* 20 Mo. 382; *Trust and Savings Co. v. Home Lumber Co.,* 118 Mo. 447, 24 S. W. 129; *Miller v. Farmers Milling & Elevator Co.,* 78 Neb. 441, 110 N. W. 995; *Morris v. Hussong Dyeing Machine Co.,* 81 N. J. Eq. 256, 86 Atl. 1026; *Bank of Attica v. Manufacturers' and Traders' Bank,* 20 N. Y. 501; *Driscoll v. West Bradley & C. M. Co. et al.,* 59 N. Y. 96, 102; *C. N. Bank v. Colwell,* 132 N. Y. 250, 30 N. E. 644; *Ireland v. Globe Milling Co.,* 21 R. I. 9, 41 Atl. 258; *Brightwell v. Mallory,* 18 Tenn. 196; *Herring v. Ruskin Co-Op. Ass'n,* 52 S. W. 327 (Tenn.

1899) ; *Johnston v. Laflin,* 103 U. S. 800; *Feckheimer v. The Nat. Exchange Bank of Norfolk, Va.,* 79 Va. 80; *In re Klaus,* 67 Wis. 401, 29 N. W. 582.

In 1887 the legislature passed an act providing that twenty or more persons may organize a coöperative society for the purpose of more successfully promoting or conducting industrial pursuits. Such societies were given all the rights, privileges, and powers conferred by law on other corporations, but it was provided that the shareholders should have but one vote each in all matters pertaining to the business of the society, without regard to the number of shares owned. (Gen. Stat. 1909, §§ 1904-1906.) In 1913 telephone companies principally doing business in rural districts were authorized to change from ordinary corporations to coöperative societies of the kind permitted by the statute of 1887. (Laws 1913, ch. 138.) Another act passed in 1913 authorized the incorporation of coöperative associations for the conduct of special kinds of business, not including the telephone business, and granted such associations certain special privileges, among which was the right to adopt by-laws relating to the manner of becoming a member. (Laws 1913, ch. 137.) In 1915 an act was passed repealing the act of 1887 and providing that twenty or more persons may organize a coöperative corporation in the manner and form provided by law in other cases, for the purpose of more successfully promoting and conducting any business or industrial pursuit. Sections 2 and 4 of the act of 1915 (Laws 1915, ch. 159) read as follows:

"SEC. 2. That every such corporation when so organized and incorporated may issue stock to its share holders in such amounts and with such limitations as are hereinafter defined. That the share holders in any such mutual or co-operative corporation, shall each have but one vote in all matters pertaining to the business of such corporation, without regard to the number of shares owned, and no share holder may own to exceed 5% of the total capital stock of any such co-operative corporation, organized under the provisions

of this act; and no such share holder in any co-opera-
tive corporation may own to exceed 5% of the total
capital stock of any other co-operative corporation; and
no co-operative corporation shall own to exceed 5% of
the total capital stock of any other co-operative cor-
poration.

"SEC. 4.    That every such co-operative corporation,
when organized and incorporated, shall enjoy all the
rights, privileges and powers not in conflict with the
provisions of this act, as are conferred by the statutes
of this state on other co-operative corporations."

Such limitations as the legislation of 1887, 1913 and
1915 contains respecting corporate membership are con-
fined to coöperative societies.    They mark the extent of
the legislative favor.    The general corporation act re-
mains unchanged.    The inference is that coöperative as-
sociations have no authority to impose limitations other
than those specified, and that even this restricted au-
thority is still denied to noncoöperative corporations
formed under the general law.    The defendant under-
took to secure to itself by its own act corporate privi-
leges which it takes an act of the legislature to obtain.

The defendant argues that the controversy is de-
termined by the decision in the case of *Telephone Co. v.
Longfellow*, 85 Kan. 353, 116 Pac. 506.    In that case a
number of farmers associated themselves together to
build a rural telephone line, procured a charter, and
adopted a constitution and by-laws similar in some re-
spects to the constitution and by-laws adopted by the
present defendant.    Restrictions on the transfer of
stock were contained in the constitution and by-laws
and not in the charter, as stated in the opinion (p. 353).
An assignee of a certificate of stock did not comply with
the rules of the company and did not secure a transfer
of his stock in accordance with such rules.    Neverthe-
less he attached a telephone to the wires of the company.
An order dissolving a temporary injunction restraining
the stock purchaser from using the company's wires
was reversed.    It was claimed that some of the by-laws

were not properly adopted because certain necessary formalities had not been observed, but the question of corporate power to attach conditions to the transfer of stock was not raised, considered, or decided. It was not contended that the by-laws were unreasonable, and the opinion of the court so stated. The court limited its decision to the questions presented by the parties, and the decision has no bearing on the subjects now under consideration.

Besides what has been said, the statutes of this state forbid private corporations to traffic in their own stock.

The amount of the capital stock of a corporation, the number of shares into which it is divided, the names and addresses of the stockholders, and the number of shares held by each must be stated in the charter. (Gen. Stat. 1909, § 1702.) More detailed information relating to the same subjects must be furnished in the annual reports to the secretary of state upon which the corporation tax is computed. (Laws 1913, ch. 135.) Subscriptions to and payment for capital stock are essential to corporate organization (*Walton v. Oliver,* 49 Kan. 107, 30 Pac. 172; *Bank v. Sheldon,* 86 Kan. 460, 121 Pac. 340), and no corporation for profit except railroad and banking corporations and building and loan associations shall commence business until the corporation certifies to the secretary of state that not less than twenty per cent of the authorized capital has been paid in money or the equivalent of money (§ 1709). Whenever the full amount of the capital stock has not already been subscribed the directors or trustees shall within three months after filing the charter cause books to be opened for the receipt of subscriptions to the capital stock (§ 1734) and the directors or trustees may dispose of the residue of the capital stock as the by-laws may prescribe (§1741). If the capital stock be too large it may be reduced by following a prescribed method. The reduction constitutes an amendment of the charter, which must be certified and filed with the

secretary of state, and notice of the amendment must be published in the county where the principal office of the corporation is located. (§§ 1730, 1731.) These and other provisions of the corporation act clearly indicate that capital stock shall be subscribed and paid for by stockholders, who thereby provide the capital for carrying on the corporate enterprise. It is the business of the directors or trustees, first, to see to it that the amount of the capital stock is subscribed by stockholders, and then to prosecute the corporate enterprise with the capital thus obtained. The power of a corporation to acquire its own stock for the purpose of securing debts and dues is exceptional and is derived from the following grant:

"Every corporation, as such, shall have power: . . . (4) To hold, purchase, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require, and also to take, hold and convey such other property, real, personal, or mixed, as shall be requisite for such corporation to acquire, in order to obtain or secure the payment of any indebtedness or liability due to or belonging to the corporation." (Gen. Stat. 1909, § 1722.)

The distinction between the acquisition of property to accomplish the purpose for which the corporation was organized and for the exceptional purposes is clearly drawn, and in order to leave no doubt on the subject the legislature inserted the following provision in the corporation act:

"No corporation created under the provisions of this act shall employ its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." (Gen. Stat. 1909, § 1742.)

The use of the means or assets of a corporation to buy up its own capital stock permits the withdrawal of a stockholder without substituting another in his place, repays to the withdrawing member his share of the capital, reduces the amount of the fund contributed to

the common venture, to that extent injures continuing shareholders and creditors, and opens the door to mismanagement and unfairness. In the early case of *Savings Bank v. Wulfekuhler*, 19 Kan. 60, the power of a bank to purchase its own stock except to secure a previously existing debt was denied. There are special reasons why a bank should not be allowed to deal in its own stock, but section 1742 was cited as a prohibition upon the power of the bank, and that section is universal in its terms. It applies equally to all corporations which may be created under the general corporation law. The result is that the law will have to be changed before the court is at liberty to recognize the general power of any corporation to purchase its own capital stock.

Heretofore the court has always observed the accepted rule of statutory interpretation that corporate power must be clearly granted, either by express terms or by necessary implication. When the corporation as a factor in the economic life of the state was the subject of much popular criticism the rule was adhered to. Now that the corporate form of organization is freely resorted to by all classes of people the rule will not be departed from.

Some minor defenses are urged. It is said that the plaintiff procured some of the shares offered for registration by misrepresenting the financial condition of the association. Until the former holders take steps to recover their stock and to prevent transfers to the plaintiff the defendant need not be concerned. It is said that the plaintiff acquired his stock for the use and benefit of a rival telephone company; that his admission to membership in the association would be detrimental to its welfare, and that if he succeeds in his designs an ultimate monopoly of the telephone business in the territory occupied by the two companies will result. The proof is that the plaintiff purchased

Moore v. Annuity Association.

his stock with his own money. The subject of the admission of unfriendly stockholders has been disposed of. The plaintiff does hope to consolidate the two companies. The public utilities commission will look after the public interest when consolidation is actually proposed.

The writ is allowed.