No. 20,816.

W. B. KIRKPATRICK, as National President of The Knights and Ladies of Security, *Plaintiff*, v. JOHN V. ABRAHAMS et al., *Defendants;* H. P. FARRELLY, *Intervenor*.

No. 20,823.

THE NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SECURITY, *Plaintiff*, v. H. P. FARRELLY, *Defendant*.

SYLLABUS BY THE COURT.

1. INSURANCE—*Fraternal Societies Organized Before 1898—Controlled by Act of 1898.* Since the act of 1898, providing for the organization and regulation of fraternal beneficiary societies, took effect, constitutions of societies organized before 1898 and continuing to do business under the act without reincorporation are to be treated in the light of articles of association or charters under the act, so far as they relate to the same subjects, including provisions relating to plan of organization and provisions for amendment.

2. SAME—*Fraternal Societies—Plan of Organization—Amendment—Constitutional Requirements.* The plan of organization of such a society, set forth in its constitution, can not be amended by a simple by-law not enacted according to the provision of the constitution relating to its amendment.

3. SAME—*Fraternal Society—By-law Contravenes Constitution—Invalid.* Section 56 of the by-laws of The Knights and Ladies of Security, a fraternal beneficiary society of the character described in paragraph 1 above, providing that appointments by the national president to committees, the members of which become *ex officio* members of the supreme legislative body, shall not become effective until approved by

the national executive council, contravenes section 2 of article 4 of the constitution of the order giving the president unconditional power to make such appointments.

Case No. 20,816. Original proceeding in mandamus. Opinion filed July 8, 1916. Judgment for the plaintiff and the intervenor.

*Edwin D. McKeever,* of Topeka, for the plaintiff.

*A. M. Harvey, R. W. Blair, C. A. Magaw,* and *T. M. Lillard,* all of Topeka, for the defendants.

*H. P. Farrelly,* and *T. R. Evans,* both of Chanute, for the intervenor.

Case No. 20,823. Original proceeding in quo warranto. Opinion filed July 8, 1916. Judgment for the defendant.

*A. M. Harvey, R. W. Blair, C. A. Magaw,* and *T. M. Lillard,* all of Topeka, for the plaintiff.

*H. P. Farrelly,* and *T. R. Evans,* both of Chanute, for the defendant.

The opinion of the court was delivered by

BURCH, J.: These actions involve the question whether or not appointments to certain committees by the national president of the Knights and Ladies of Security require the approval of the national executive committee.

The Knights and Ladies of Security is a fraternal beneficiary society operating under chapter 23 of the Laws of 1898 (Gen. Stat. 1909, § 4303 *et seq.*). The supreme governing body is the national council. The laws of the order consist of a constitution comprising eight articles and a code of laws comprising numerous sections. Article 4 of the constitution provides for a national executive committee and several other committees, including a law committee. Section 2 of article 4 reads as follows:

"The National Executive Committee shall be composed of the National President, National Secretary, and three other members to be elected by the National Council. The other committees shall be composed of three members each, to be appointed by the National President, as soon after his election and installation as is practicable, who shall be *ex officio* members of the National Council."

The national president made the appointments which he is authorized to make, including the appointment of H. P. Farrelly as a member of the law committee.  Section 56 of the laws of the order reads as follows:

"Any appointment made by the National President to committees shall not become effective until approved by the National Executive Committee."

The national executive committee refused to approve the national president's appointments.  In the first case the national president asked for a writ of mandamus to compel the national executive committee to approve his appointments. Farrelly intervened, claiming his appointment was valid without the approval of the national executive committee.  The other proceeding is one of quo warranto, brought against Farrelly to test his authority to act as a member of the law committee without approval of his appointment by the national executive committee.  The decision in each case depends on the effect, if any, to be given section 56 of the laws of the order.

The Knights and Ladies of Security was organized in 1892 as a body corporate, without capital stock, under the provisions of section 1 of chapter 89 of the Laws of 1879, relating to the organization of benevolent associations.  Under that act it had the same power to make by-laws for the regulation of its affairs as other corporations, that is, as provided in section 19 of chapter 23 of the General Statutes of 1868, which reads as follows:

"The directors or trustees may adopt by-laws for the government of the corporation; but such by-laws may be altered, changed or amended by a vote of the stockholders, at an election to be ordered for that purpose by the directors or trustees, on the written application of a majority of the stockholders or members." (Gen. Stat. 1909, § 1737.)

Since there were no stockholders the board of directors alone had power to enact by-laws.  (*Steele v. Telephone Association,* 95 Kan. 580, 582, 148 Pac. 661.)  Probably this method was not followed, and whatever laws the society had for its government depended on adoption by acts and conduct of the society and its officers rather than by express vote or written manifestation of the board of directors.

In June, 1898, the order had a lodge system with ritualistic form of work and a representative form of government.  Mem-

bers of the order were united in subordinate councils, under the jurisdiction and control of the national council. Subordinate councils were entitled to send representatives to meetings of the national council. The presiding officer of a subordinate council was called the president. The organization and government of the society was provided for in a constitution comprising ten articles and a code of laws comprising sixteen articles divided into numerous sections. The constitution related to fundamental subjects, indicated by the following article headings: Article I, Name, Purpose, System and Territory; Article II, National Council—Composition and Powers; Article III, Officers of National Council; Article IV, Committees, and their Duties; Article V, Beneficiary Certificates; Article VI, Reserve Fund; Article VII, Membership; Article VIII, Who Only May be Beneficiaries; Article IX, Officers of Subordinate Councils; Article X, Amendments. The national council was given supreme legislative authority, including power to amend the constitution. Power to amend the constitution was limited by article 10, as follows:

"This Constitution may be amended in the following manner, and none other: All proposed amendments shall be made in writing and signed by five Past-Presidents, and sent to the National Secretary not later than ninety days prior to the meeting of the National Council, when it shall be the duty of the National Secretary to have the same printed and to send a copy to each Subordinate Council and to each representative. All amendments to be in force when adopted and promulgated by the National Council."

This article remained in force until 1906, when it was changed in some particulars, but the requirement of a written proposal signed by five persons belonging to a designated class, transmitted to the national secretary before the meeting of the national council, and service by the national secretary of a printed copy of the proposed amendment on each duly elected subordinate council representative, has never been departed from.

Article 15 of the laws provided for their amendment, as follows:

"These Laws may be amended by a majority vote of the National Council at any regular meeting, and all amendments shall take effect and be in force from and after the publication of the same in the Journal of Proceedings of the National Council, or as otherwise ordered."

Section 2 of article 4 of the constitution gave the national president power to appoint members of named committees other than the executive committee, including members of the law committee, who became *ex officio* members of the national council. This section of this article has been changed in some particulars not material here, but it has never been amended in respect to the power of the national president to appoint members of committees of the national council other than the executive committee.

Such was the constitution of the order when the statute of 1898, providing for the organization and regulation of fraternal beneficiary societies, orders and associations, was passed. (Laws 1898, ch. 23.) Section 1 of the act of 1898, as amended by section 1 of chapter 147 of the Laws of 1899, reads in part as follows:

"A fraternal beneficiary association is hereby declared to be such a corporation, society or voluntary association of individuals, formed or organized into a lodge system with ritualistic form of work, or composed of members of an order or society having a lodge system with ritualistic form of work, or of such members, their wives, widows, or daughters, as shall make provision for the payment of benefits in case of death, sickness, or temporary or permanent disability, and shall be carried on for the sole benefit of its members and their beneficiaries, and not for profit. Every fraternal beneficiary association as herein defined shall have a representative form of government, with provisions for corporate meetings, and, subject to compliance with its constitution and laws, shall make provision for the payment of benefits in case of death, and may make provision for payment of benefits in case of sickness, temporary or permanent disability, either as a result of disease, accident, or old age." (Gen. Stat. 1909, § 4303.)

Section 7 of the act of 1898 provided that the organization of a fraternal beneficiary society might be accomplished by filing with the superintendent of insurance a signed and acknowledged document which, on approval and on compliance with certain formalities and the payment of certain fees, became its charter under the name of articles of association. It was provided that articles of association should state among other things the following:

"The object or purpose for which the incorporation is sought, including the plan of organization and method of conducting the business, in-

cluding provision for corporate meetings for the adoption or amendment of articles of association and by-laws and the election of officers." (Gen. Stat. 1909, § 4309.)

Societies already organized and having the right to do business within the state as provided by the act were entitled, on compliance with certain conditions, to certificates authorizing them to do business within the state. (Gen. Stat. 1909, § 4308.) Privilege to reincorporate under the act was granted (§ 4308), but all fraternal beneficiary societies, as defined by section 1 of the act, were to be governed by the provisions of the act and were exempted from the provisions of other insurance laws (§ 4303). Societies organized under the act were created bodies corporate with power to adopt by-laws and with power to amend articles of association in the manner prescribed by by-laws.

The organization and scheme of the Knights and Ladies of Security corresponded so well to the legislative requirements that reincorporation was not necessary. What is now section 56 of the laws of the order, placing a limitation on the constitutional power of the national president to appoint committees, came into the code in the year 1900 as a simple law enacted under the national council's ordinary legislative power, and not as an amendment to the constitution and without the constitutional provision relating to amendment of that document having been changed.

The legislature of 1898 dealt with conditions as it found them. Many corporations and voluntary associations of the mutual benefit kind were doing business in the state. They had adopted rules for their own government. It was customary to divide these rules into two parts, the constitution and the laws or by-laws. In the constitution the name and purposes of the association were usually specified and the general frame of the government set forth. The provisions of the constitution were always regarded as fundamental and special restrictions on the method of changing them were habitually imposed. In the by-laws, rules for the conduct of the affairs of the association under the constitution were stated, and because frequent modification to meet changed and changing conditions might be necessary, little formality in amending them was required. Once adopted, whether by a corporate or by an incorporate

society, the constitution was regarded as the fixed and permanent agreement between members, officers and constituent and governing bodies, and interested persons felt, and had a right to feel, that it would not be abrogated or changed except in strict compliance with the method underwritten in the article relating to amendment. Perhaps in the case of incorporated societies the popular view of the distinction between constitution and by-laws cut across legal theories, but that view persisted and predominated nevertheless. When the notion of the mutual benefit society became clearly conceived associations multiplied with great rapidity. Promoters and managers often reaped considerable profit and advantage and sometimes some distinction, and there were frequent struggles for the control of organizations. The rights of members and beneficiaries became a subject of great importance and the integrity of adopted rules of associated life became a matter of serious social concern. When the legislature approached the subject of regulating fraternal beneficiary associations it took cognizance of the fact that the thoughts, habits and practices of the people had refused to conform to the grooves of the law relating to private corporations organized for profit and having capital stock, and recognized in the first section of the act of 1898 that such an association would have "its constitution and laws." Before 1898 corporate charters were not required to contain anything with respect to the adoption and amendment of by-laws, and, as already indicated, the enactment of by-laws was left entirely to boards of directors and trustees, subject to modification by stockholders at stockholders' meetings ordered for the purpose. By the act of 1898 corporate charters were required to set forth the plan of organization, including provisions for the adoption and amendment of by-laws. Whatever these provisions may be they are portions of the articles of association, and officers, committees, legislative bodies, subordinate bodies, members and beneficiaries are all bound by them. They are fundamental in character and can not be changed except according to rules lawfully prescribed. Supreme legislative bodies, formerly clothed with power to make and unmake rules, whether stated in the form of constitution or of by-laws, and consequently with power to execute legislative coups, are no longer supreme but must act according to

charter limitations. Indeed, the popular notion of the supremacy of the constitution of a society over its legislative body has triumphed and has been given expression in the statute book so far as mutual benefit associations are concerned.

After the act of 1898 took effect the Knights and Ladies of Security could not continue to do business unless its plan of organization and method of doing business corresponded to those of corporations which might be formed under the act. Its plan of organization and method of doing business did conform to the statute and reincorporation was not necessary. Essential features of articles of association under the statute were embraced in the constitution, which included express provisions fully covering the subject of amendment. Other matters were covered by by-laws which contained a provision relating to their amendment. Without the statute simple good faith on the part of the national council required that it should not arbitrarily disregard provisions of the constitution, whatever its strict legal power might be, and the court is of the opinion the purpose of the statute was that constitutional provisions of corporations continuing in business without reincorporation should be regarded in the same light as articles of association of corporations formed under the act, so far as they relate to the same subjects, including stated provisions for amendment.

The constitutional provision giving the national president power to make appointments to office was important because it related to the subject of membership in the national council, a material feature of the plan of organization, and the power granted could not be infringed upon except by an amendment of the constitution adopted after written proposal signed by qualified persons and service of printed copies on elected representatives of subordinate councils.

Conflicts between provisions of the by-laws of a fraternal beneficiary society are to be resolved in the same manner as conflicts between statutes. Supposedly conflicting provisions are to be harmonized and each given effect if possible. It is not easy to give any effect to law 56. While the national council could not limit the national president's power of appointment without a constitutional amendment, it had plenary

Kirkpatrick v. Abrahams.

power over the executive committee, and so far as the executive committee is concerned could require it to approve the national president's appointments.    Perhaps such approval might serve as a sort of authentication or attestation or witnessing of the national president's act.

It is argued from evidence taken that the right of the executive committee to approve or disapprove appointments under law 56 has never been questioned.    On the other hand it is argued that appointments of the national president have always heretofore been accepted and approved without question.    The constitution is no longer a matter between friends, and the court prefers to rest the rights of the parties on the written laws of the order.

Because a regular meeting of the national council was about to be held, decisions of the two cases were announced as soon as possible after the hearing.    The foregoing opinion states the reasons for the decisions.    The executive committee approved the national president's appointments and thus obviated all necessity for the issuance of a writ against them. Both proceedings were prosecuted in an official capacity and subserved the same purpose, an interpretation of the laws of the order.    They will be treated as having been consolidated and the costs will be taxed to the national council, the plaintiff in the quo warranto proceeding.

WEST, J. (dissenting) :  The foregoing opinion correctly decides a case involving a private family quarrel with which we should have nothing whatever to do.

The legislature guarded against going thus afield when it prescribed that a writ of mandamus may be issued to compel the performance of any act which the law specifically enjoins as a duty resulting from an office, trust or station.  (Civ. Code, § 714.)    What office, what trust, or what station; what act specifically enjoined; by what law do we find in the record? None.    The case should be dismissed.  (*Reno Lodge v. Grand Lodge,* 54 Kan. 73, 37 Pac. 1003; *Supreme Lodge v. Raymond,* 57 Kan. 647, 47 Pac. 533; *Moore v. National Council,* 65 Kan. 452, 70 Pac. 352; *Stadler v. Bnai Brith,* 5 Ohio Dec. (Reprint) 221, 3 Am. L. Rec. 589; 29 Cyc. 199.)