THE SUPREME LODGE OF THE ORDER OF SELECT
FRIENDS V. DANIEL T. DEY.
### No. 9820.

FRATERNAL INSURANCE — *laws of society permitting, but not re-
quiring, appeal to tribunal of order, action maintainable
without appeal.* The general laws of a mutual benefit society,
which, by the use of only permissive words, allow an appeal from
the decision of an officer of the order before whom the claimant
of a death or disability benefit is required in the first instance to
prosecute his claim, but which do not obligate him to appeal
from an adverse decision as a condition precedent to an action
upon his certificate or policy of insurance, do not, in the event of
such decision, preclude the claimant from maintaining an action
in the courts for the recovery of his loss, without having taken
such appeal.

Error from Crawford District Court. Hon. J. S.
West, Judge. Opinion filed June 5, 1897. *Modified.*

*J. L. Denison,* for plaintiff in error.

*Fuller & Randolph,* for defendant in error.

DOSTER, C. J. In the case of *Order of Select Friends
v. Raymond,* 57 Kan. 647, we had under consideration
the question of the right of a holder of a benefit cer-
tificate in the plaintiff organization to resort to the
courts to compel satisfaction of his claim. It was
there held :

" It is competent for a fraternal organization, which
provides for the payment of benefits, to make reason-
able rules or laws requiring those claiming benefits to
submit their claims to designated officers or tribunals
of the organization for investigation and allowance
before the claims are made the subject of litigation in
the courts ; but a requirement of this kind does not
abridge the right of members to resort to the courts
when their claims have been submitted to, and finally
rejected by, such officers and tribunals. The right of
resort to the courts will not be deemed to have been
taken away by mere inference, and, if it can be done

at all, it will only be where the restriction is stated in the clearest and most explicit terms."

We are now called upon to determine whether the claimant under a benefit certificate issued by the society in question, is compelled to exhaust all the remedies provided by its laws, by way of appeal from one tribunal to another, before resorting to the courts for the collection of his claim.

The general laws of the Order, after declaring the circumstances under which a member may become entitled to apply for the fulfillment of its contract or policy of insurance, provide as follows :

"Any member claiming the disability benefit under section 8 or 9 of this law, shall make application therefor to his lodge upon the blank form furnished by the Supreme Lodge, accompanied by a certificate of a reputable physician, setting forth in full the nature and extent of the disability; thereupon such certificate and application shall be forwarded to the Supreme Medical Director, and a certified copy thereof sent to the Supreme Recorder, to remain on file as part of the papers in such case.

" Upon receipt of proper notice of disease or accident disability, the Supreme Medical Director shall immediately proceed to investigate the same, and for that purpose shall appoint one physician who shall be paid by the Supreme Lodge, the subordinate lodge to which the member belongs shall appoint one to be paid by such subordinate lodge, and the member shall appoint one to be paid by said member, neither of whom shall be the member's attending physician or a Subordinate Medical Examiner of this order, whose duty it shall be to make a careful examination of the member's condition, and report to the Supreme Medical Director as to the character and permanency of such disability. If it shall appear from such examination that the member is totally and permanently disabled from following his usual business, occupation, or profession, the Supreme Medical Director shall approve the same and order the benefit paid. If,

however, in the opinion of the Supreme Medical Director there is a fair and reasonable doubt concerning his total or permanent disability, he shall reserve his opinion thereon for any period he may determine upon, not exceeding six months, and shall then order a new examination to be made by the same or other physicians.    If the result of this second examination also be uncertain, the Supreme Medical Director may, in like manner, provide for a third examination, which shall be made within three months thereafter, and upon this being done, or upon the expiration of the said three months, he shall either recommend or refuse to recommend the benefit paid, and, for his service rendered in disability claims, receive such an amount as the Supreme Lodge or the Supreme Executive Committee shall determine.    Any claimant or his representative feeling aggrieved at the decision of the Supreme Medical Director may take such case by appeal to the Supreme Executive Committee, thence to the Supreme Lodge, by serving notice thereof upon the Supreme Recorder, within thirty days after receipt of notice of the Supreme Medical Director's decision or of the decision of the Supreme Executive Committee ; and at the next regular or special session of the Supreme Lodge or Supreme Executive Committee it shall accord the applicant a fair and full hearing, and then dispose of the matter by a majority vote of the Supreme Executive Committee, or if in the Supreme Lodge, by a majority vote of all present entitled to vote thereon, as justice and equity may demand :  Provided, that the Supreme Medical Director or any member of the Supreme Executive Committee shall not vote thereon.''

The defendant in error, a member of the Order, claiming to have incurred a disability entitling him to the payment of his benefit certificate, prosecuted his claim before the Supreme Medical Director in accordance with the foregoing provisions.    That officer rejected the claim ; whereupon the defendant in error brought suit for its recovery.    Upon the trial, judgment was rendered in his favor, from which the Su-

preme Lodge of the Order prosecuted error to this court.

The gist of the decision in *Order of Select Friends v. Raymond,* supra, was, that the right of resort to the courts for the determination of disputed questions of contract liability can only be relinquished, if at all, by the use of the clearest and most explicit terms ; that such relinquishment is not to be presumed or inferred from language which stops short of an express renunciation.   This is conceded by plaintiff in error, so far as the right to *finally* appeal to the courts is concerned, but the claim is put forward that one may contract to hold his right of resort to the courts in abeyance until such private and special remedial agencies as may be agreed upon have been applied to and have decided adversely ; that, for instance, a member of a benefit society may contract to withhold his appeal to the courts until all the tribunals provided by the order have reviewed his case and determined it against him ; and it is said that, considering the benevolent and fraternal character of the Order in question, a fair construction of the terms of its general laws, to which defendant in error subscribed, shows that such a contract was made.

In addition to the sections of the society's general laws before quoted, it is elsewhere provided that "no claim for a benefit from the relief fund shall be paid until all the laws or rules of the Order have been fully complied with, and the requisite proof of the justness of the claim has been made in accordance with the general laws of the Order " ; and elsewhere it is declared that " the supreme lodge, when convened agreeably to the provisions of the constitution and laws of the Order, shall have original jurisdiction over all subjects pertaining to the welfare of the Order, and absolute control of all appeals from the grand or subordinate lodges and members ; and its decisions upon

all questions and appeals, when properly presented and heard, are the supreme law of the Order." It will be conceded that the settlement of disputes concerning the payment of death or disability claims, within the membership of the Order and by its own tribunals specially provided therefor, without resort to the courts, is within the general design of all fraternal co-operative societies, and that the law should be given such reasonable interpretation as will promote such design and subserve the desires of the Order in that respect. However, as remarked in *Order of Select Friends v. Raymond*, supra, the fact must not be overlooked that such societies are not purely charitable organizations, nor the benefits promised by them in the nature of gratuities. The relation between the society and its members is, after all, a contract relation; and in the effort to ascertain the rights of a member against the society upon the occurrence of a loss by him, their positions and interests are antagonistic. In every case, therefore, resort must be had to the contract to determine the rights of the one and the obligations of the other. It will be observed that, in the section of the society's laws providing for the initiation of a demand under a benefit certificate, the words used are mandatory in their meaning. They are: "Any member claiming the disability benefit *shall* make application therefor to his lodge, . . . accompanied by a certificate of a reputable physician; . . . thereupon such certificate and application *shall* be forwarded to the Supreme Medical Director," etc. This language imposes an obligation upon the member to present his claim, in the first instance, to the subordinate lodge to which he belongs, and to permit its reference to the Medical Director for adjudication. An appeal to the courts will not lie until this has been done; because the

member, by subscribing to this reasonable require-
ment, binds himself to permit an investigation into
his claim by an officer specially agreed upon therefor.
Had the subsequent provisions, relating to appeals
by the member, been expressed in such mandatory
phrases, no doubt could arise as to his obligation to
follow the prescribed course. The courts, in such an
instance, would refuse inquiry into his case until he
had exhausted the remedies, within the Order, which
he had agreed to pursue.

But the provisions relating to appeals are not man-
datory; they are only permissive. They confer a
right upon him, but they do not compel him to pur-
sue it as a condition precedent to an action in the
courts. They afford a cumulative remedy, but are
not exclusive requirements. The language employed
is: "Any claimant or his representative feeling
aggrieved at the decision of the Supreme Medical
Director *may* take such case by appeal," etc. We
know of no rule of construction which requires such
language to be given an obligatory, instead of a per-
missive signification. The provision that "no claim
for any benefit from the relief fund shall be paid until
all the rules of the Order shall have been complied
with," should, of course, be construed *in pari materia*
with the one relating to appeals, if to do so would
throw any light upon the subject, but it would not;
the question would still remain: Is the permission
to appeal, not a permission merely, but an obligation
to appeal if aggrieved? Nor does the article vesting
in the Supreme Lodge jurisdiction over appeals and
making its decisions thereon "the supreme law of the
Order," aid us in determining whether the privilege
of appeal is a grant of favor to the claimant, or a lim-
itation upon his right.

The provisions we have been construing, called the

" General Laws " of the society, may, for the purpose of aiding us to a conclusion, be likened to an ordinary public statute, and, therefore, possessing such character, be subject to the ordinary rules of statutory interpretation.   They are the statutes of the society, binding its constituency in the same way and to as great an extent as public statutes bind the general citizenship.   We take it that the usual methods by which we arrive at the intent of a legislative enactment may be employed to ascertain the meaning of the words used in the articles in question.   Words of permission, it is true, are sometimes used in an obligatory sense ; but the cases in which such meaning is given, are always stated to be where the thing directed to be done is for the sake of justice, or where third persons or the public have an interest in the performance of the act authorized.   Dwarris on Statutes, 220 ; *Blake v. Portsmouth & Concord Rld.*, 39 N. H. 435.   Where, however, the public rights and interests are not concerned, or private persons have no lawful claim or interest in the exercise of the power, the word " may," by which the power is conferred, should receive its ordinary meaning.   Dwarris on Statutes, *supra ; Miner v. Mechanics Bank*, 1 Pet. (U. S.) 64 ; *Buffalo Plank Road Co. v. Highway Comm'rs*, 10 How. Pr. R. (N. Y.) 239.

Although the provisions we have quoted apply only to the membership of the Order in question, and are not public statutes, yet, constituting as they do, a code of laws for the government of the society, as to it, they possess characteristics which justify the employment of the ordinary rules of statutory interpretation to ascertain their meaning.   The rights and interests of the society are not concerned that an aggrieved member shall appeal from the decision of one of its tribunals to another.   No member of the society, or other private person, has a lawful claim or interest in

the exercise of the right of appeal. Therefore, the permissive words found in the society's code of laws will be given that ordinary signification which they receive when used in general legislative enactments.

The conclusion which we have reached is supported by the decision of the Supreme Court of Indiana in *Bauer v. Samson Lodge* ( 102 Ind. 262 ), in which it was held : "By-laws merely giving a member the right to appeal to a superior body will not deprive him of his rights to sue ; to have that effect it must positively require him to prosecute an appeal before resorting to the courts for redress." For an elaboration of some of the reasons which incline us to the decision made, we quote from the opinion in that case :

" In order that this general right, a right possessed by all citizens, should be curtailed, it must clearly appear that he to whom the money is due has agreed that it may be abridged. One who asserts a claim to money due upon a contract, occupies an entirely different position from one who presents a question of discipline, of policy or doctrine, of the order or fraternity to which he belongs."

All the decisions, from first to last, recognize a broad distinction between the two classes of cases ; and the one before us belongs to the class where property rights are involved, and is a member of a class cognizable by the courts. The policy of the law, as declared in our Constitution and by our decisions, is to fully open the courts to those who seek money due them upon contract ; and the party who asserts that the right to invoke the aid of the courts has been curtailed, must show a clear agreement abridging the right. These principles necessarily lead to the conclusion that a corporation that has agreed to pay pecuniary benefits to one of its members, cannot successfully resist an appeal to the courts without showing an agreement by the member that, before making

such appeal, he will pursue a course of procedure prescribed by the laws of the organization. In the case in judgment, there is a clear right to the benefits claimed, for so the by-laws provide ; and where there is a right there is a remedy. If there is a remedy, it is the usual one, unless by a legal contract the parties have otherwise agreed.

Here, the usual remedy, open and free to all citizens having just demands, is an ordinary action at law ; and the question narrows to this : Has the claimant abridged his remedy by contract? We find nothing in the by-laws that can be deemed a partial or total surrender of his right to enforce his contract in the usual method. It is true that there is a general right to appeal provided for, but there is no stipulation that the claimant of benefits shall appeal ; and, if we are correct in our reasoning, there is no abridgment of his right to pursue the usual remedies. In order to abridge this right there must be a stipulation to that effect. Men do not lose their legal right to enforce their contracts, unless they yield it up by agreement. The provision that an aggrieved party may appeal is permissive ; it does not wrest from him the right conferred upon him by law. If a man has a legal right, and the corporation of which he becomes a member adds another—that of appeal to its superior governing bodies—the added right is merely cumulative ; it is not exclusive. Only positive words can take away an existing right. Conferring a right to pursue a given course does not destroy an existing right. In order to destroy such a right, proper limiting words must be employed. Here there are no limiting words. There is nothing that limits the general right to sue in courts ; and a right such as this cannot be taken away without a clear agreement surrendering it. If

it had been the intention to require members to surrender their rights to sue at once upon a breach of contract, and to compel them to first appeal to the grand bodies of the Order, it would have been easy to so declare; but there is no such declaration, and, therefore, no agreement taking away the right to sue for the enforcement of the contract, which claimant possessed by virtue of the law of the land. The right to sue, is, as we may have seen, one given by law; and no custom can be good which is contrary to law. A custom that a party, having a claim for money due upon contract, may not pursue the usual remedies provided by law, is not valid.

We have examined the claim put forward by the plaintiff in error that the defendant in error was not, under the definition of "total and permanent disability", contained in the general laws of the Order, entitled to the payment of his benefit certificate. The evidence as to the character and extent of the disability in question convinces us of the justness of the claim made, and we accordingly rule against this contention of the plaintiff in error.

The judgment of the court, however, must be modified in amount. It was stipulated on the trial of the case that "in the event that plaintiff was entitled to recover in his action the amount of his recovery would be $2,197.45." The court, however, rendered judgment in his favor for $2,549.04. It is said that the difference is interest accrued upon the amount due to the claimant between the occurrence of the disability and the date of the judgment in his favor. This is perhaps true; but the stipulation between the parties as to the amount of liability, if any, must control. We cannot sustain the judgment as rendered. It is ordered modified as to the excess above the stipulated amount, and affirmed as to the remainder.