MICHAEL J. HORGAN *vs.* METROPOLITAN MUTUAL AID
ASSOCIATION.

Suffolk.    March 19, 1909. — June 22, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY,
SHELDON, & RUGG, JJ.

*Fraternal Beneficiary Corporation.    Mandamus.*

A vote of a mutual benefit corporation suspending one of its members from membership for non-payment of an assessment of $1, regularly made, if passed without notice to the member and without giving him an opportunity to be heard, is irregular and unauthorized.

At the hearing upon a petition for a writ of mandamus against a mutual benefit corporation to compel the reinstatement of the petitioner as a member of the respondent, it appeared that by a vote of the respondent the petitioner was suspended from membership for non-payment of an assessment of $1, regularly made, but that the vote was passed without notice to the petitioner and without giving him an opportunity to be heard, and that at the time the assessment became due the petitioner was disabled and was receiving benefits, or should have been receiving them.  A by-law of the respondent provided as follows : " A member being at the time sick or disabled and receiving benefits, cannot be debarred from receiving a continuation of such benefits because of his inability to pay his assessment.  The president being authorized to deduct from the sums paid him for benefits such amounts as will keep him in good standing, which money so deducted is to be paid to the financial secretary and his receipt

taken therefor." It also appeared that the petitioner was ill and unfit to work, by reason of general debility from consumption, for a period of about three months ending after his suspension by the vote mentioned above, that a committee was appointed by the respondent under a provision of its by-laws to investigate his sickness or disability, and upon their report sick benefits were paid to him for about five weeks at the regular rate provided for such cases, less $1.50 deducted under the provision quoted above for a death assessment, and for his monthly dues. Upon a report of the financial secretary that the committee had been unable to find the petitioner at home, the respondent voted to drop the petitioner from the sick list and to discontinue giving him sick benefits. It appeared that the petitioner was ready to co-operate with the committee in arranging to meet them and to be where they could find him, and it did not appear that there was any change of residence or of post office address on his part that had any connection with the action of the respondent or with the petitioner's rights in the matter. *Held*, that a writ of mandamus should issue ordering the petitioner's reinstatement.

Upon a petition for a writ of mandamus, brought by a member of a mutual benefit corporation against the corporation, which has suspended him, to compel his reinstatement, where the petitioner alleges and shows that his suspension was wrongful, it is no ground for refusing to issue the writ that the petitioner did not first resort to the provision of a by-law of the corporation on the subject of the reinstatement of a suspended member, if this provision applies only to the case of one who admits that he was suspended rightly, and who, to avail himself of it, must assume the regularity of his suspension and must pay a membership fee and one month's dues in advance, and who also, if reinstated under the by-law, cannot receive benefits until the expiration of a month from the time of his reinstatement.

PETITION, filed on February 10, 1909, for a writ of mandamus, commanding the respondent, a mutual benefit corporation organized under the laws of this Commonwealth, to reinstate the petitioner as one of its members.

The case was heard by *Sheldon*, J., who reported it to the full court as follows:

"I found that the petitioner was elected a member of the respondent on April 30, 1903, and so continued until he was suspended, as hereinafter stated, on June 4, 1908. On March 10, 1908, he became ill and unfit to work because of general debility and consumption, this not being caused from immoral or improper conduct on his part. On that day he wrote a letter to the respondent's secretary, giving notice of his illness, in accordance with section 1, article 5, of the by-laws, and stating that he was about to give up the house where he was then living, and did not know just where he should go to live, but that he could be found at No. 26 Prospect Street, Somerville, on a day's notice in advance. It did not appear that this letter was

received by the secretary. The respondent's president, under by-laws, article 5, section 3, appointed as a sick committee to investigate the petitioner's sickness or disability, three members, Clune, Dunleavy, and O'Hanlon. The petitioner was then living at No. 9 Skehan Street, Somerville, but his mail was sent to 26 Prospect Street, Somerville, where his daughter lived, and he had arranged to have any mail or notices immediately sent to him by her.

"Clune, of the sick committee, called to see the petitioner at various times at 26 Prospect Street, and at 9 Skehan Street, without finding him. The petitioner met Dunleavy on a car, of which Dunleavy was motorman, and told Dunleavy he could be found at any time by giving a day's notice to 26 Prospect Street. Clune afterwards called at 121 Webster Avenue, to which the petitioner had removed, and left word for the petitioner to meet the committee at the Spring Hill car house, which the petitioner later did, and then again told Clune that, as he was to be in the open air as much as possible during the daytime, by the doctor's order, and might not be in when one of the committee called without notice to him, he could always be found by sending notice in advance to 26 Prospect Street, but said he would come to the car barn to meet the committee.

"May 3, 1908, the petitioner received from Harrington, the division collector, the amount of his sick benefits ($38) from March 17 to April 23, less one dollar and fifty cents, of which one dollar was deducted for death assessment (No. 213) which had been duly levied, and fifty cents for his monthly dues for April. This sick benefit was voted to him by the respondent association at its meeting of April 23, 1908.

"After this meeting Clune went twice to 121 Webster Avenue, but without sending any previous notice, to see the petitioner for the purpose of reporting about his case, but did not find him. The petitioner did not go at all after April 26, 1908, to the Spring Hill car barn to meet the committee. On May 7, 1908, at a regular meeting of the respondent, Harrington informed the members that Clune had been unable to find the petitioner at his home; and the association voted to drop the petitioner's name from the sick list, and to discontinue giving him sick

benefits.   This was without any other report than as already stated.

" On April 14, 1908, an assessment was duly levied of one dollar, being assessment No. 214, payable on or before May 14, 1908.   The petitioner had due notice of this assessment, but did not pay it.   He knew, before the time for its payment expired, that he had been dropped from the sick list, and that no sick benefit was to be paid to him.   He was not given a hearing, or any notice of an opportunity to be heard, before his name was dropped from the sick list, or before he was suspended on June 4, 1908.

" He continued sick and unable to work until after June 4, 1908.   He was suspended from membership by vote on June 4, 1908, for non-payment of assessment No. 214.

" Without ruling on the questions whether the petitioner was properly dropped from the sick list, I was inclined to the opinion that the petition could not be maintained, but, at the petitioner's request, I report the case on the petition and answer and these facts to the full court; the petition to be dismissed, or the writ of mandamus to be issued, or such other order to be made as law and justice may require."

The by-laws of the respondent were put in evidence at the hearing, and a copy of them was annexed to the report and made a part of it.

Among the by-laws were the following:

" Article Five.

" Committees.

" Sect. 3.   A member having reported in writing to this Association of sickness or disability the President shall appoint a special committee of three members to investigate the sickness or disability of said member, which committee will report personally or in writing, at the next meeting, his condition, and so on at each succeeding meeting until said committee shall declare him fit for duty, at which time said member shall be taken off the sick list, and the committee discharged. Any member or members of such committee failing to comply with this article of the By-Laws shall be adjudged guilty of contempt."

" Article Seven.

" Benefits.

" Section 1. Any member of this Association in good standing, being rendered incapable by sickness or disability, of following some occupation whereby he can gain a livelihood, shall be entitled to and shall receive out of the funds of this Association such weekly benefits as are hereinafter provided for, providing such sickness or disability does not proceed from immoral or improper conduct on his part.

" Sect. 2. A member being at the time sick or disabled and receiving benefits, cannot be debarred from receiving a continuation of such benefits because of his inability to pay his assessment. The President being authorized to deduct from the sums paid him for benefits such amounts as will keep him in good standing, which money so deducted is to be paid to the Financial Secretary and his receipt taken therefor.

" Sect. 3. The amount of weekly benefits payable by this Association shall be seven dollars : which said benefit shall commence at the expiration of one week from the date of such sickness or disability and continue until such member shall be declared fit for duty by the investigating committee. Such member shall receive the sum of seven dollars for each week he may be sick or disabled and the fractional part of seven dollars for each fractional part of such week's sickness or disability; provided, however, that no member shall receive benefits for a longer term than ten weeks in any consecutive twelve months. And in all cases this Association shall have and require unquestionable and satisfactory evidence that such member is entitled to benefits."

" Article Ten.

" Reinstatement.

" Section 1. Any member who may have been suspended according to Article 8, Sect. 2 (non-payment of dues), or Article 9, Sect. 2 (non-payment of death assessments), may make application for reinstatement, and said application must be accompanied by one dollar ($1.00) as a membership fee, and all moneys due the Association at time of suspension, also one month's dues

in advance.   All other rules governing a reinstated member are covered by Article 6, Sections 1 and 2.   It is understood that the above applies also to members who have left the service of the Boston Elevated Railway Company, provided they make application to the Recording Secretary within thirty (30) days from date of suspension.

"Sect. 2.  No member who has been suspended and afterwards reinstated shall be entitled to the benefits of this Association within one month after his reinstatement."

The case was argued at the bar in March, 1909, before *Knowlton*, C. J., *Hammond, Loring, Braley,* & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices.

*C. Brewer*, for the respondent.

*F. R. Mullin*, (*P. F. Spain* with him,) for the petitioner.

KNOWLTON, C. J.   The petitioner asked for a writ of mandamus to compel the respondent to reinstate him as one of its members.   He was suspended from membership by a vote of the association on June 4, 1908, for non-payment of an assessment of $1 regularly made.   This was done without giving him any notice, or opportunity of being heard.   It is a generally recognized doctrine of law that, under a by-law like that of this association, a member, who by reason of his membership has valuable pecuniary rights and interests in such an organization, cannot be removed without giving him notice and an opportunity to be heard.   *Wachtel* v. *Noah Widows & Orphans' Benevolent Society*, 84 N. Y. 28.   *Commonwealth* v. *Pennsylvania Beneficial Institution*, 2 S. & R. 141.   *Sibley* v. *Carteret Club*, 11 Vroom, 295.   *Delacy* v. *Neuse River Navigation Co.* 1 Hawks, 274, 279.   *Fisher* v. *Keane*, 11 Ch. D. 353, 359.   *Dean* v. *Bennett*, L. R. 6 Ch. 489.   *The Queen* v. *Saddlers' Co.* 10 H. L. Cas. 404, 423.

In this particular the suspension was irregular and unauthorized.   The assessment became due on May 14, and at that time the petitioner was disabled, and was receiving benefits, or should have been receiving benefits if the respondent had done its duty.   Article Seven, Sect. 2 of the by-laws is as follows : " A member, being at the time sick or disabled and receiving benefits, cannot be debarred from receiving a continuation of such benefits because of his inability to pay his assessment.   The

President being authorized to deduct from the sums paid him for benefits such amounts as will keep him in good standing, which money so deducted is to be paid to the financial secretary and his receipt taken therefor."

It is found in the report that the petitioner was ill and unfit to work, by reason of general disability from consumption, from March 10, 1908, until after his suspension on June 4, 1908. A sick committee was appointed by the respondent in accordance with its by-laws, to investigate his sickness or disability. Upon their report, sick benefits were paid to him from March 17 to April 23, at the regular rate provided for such cases, less $1.50 deducted under Article Seven, Sect. 2, for a death assessment and for his monthly dues. Under Article Five, Sect. 3, he was entitled to receive his benefits until the committee declared him fit for duty, at which time he would be taken off the sick list. This, however, was subject to the limitation contained in Article Seven, Sect. 3, which makes his right for that year end at the expiration of ten weeks. The committee made no such declaration or report, and the respondent voted to drop his name from the sick list and to discontinue giving him sick benefits. This was done upon a statement from the financial secretary that the committee had been unable to find the petitioner at home. This action of the respondent was in violation of his legal rights.

The petitioner seems to have been ready to co-operate with the committee in arranging to meet them and to be where they could conveniently find him. If there was any fault on his part in this particular, it was not such as to justify the respondent's action in refusing to pay him sick benefits.

It does not appear that there was any change of residence or of post office address on the part of the petitioner, that had any connection with the action of the respondent, or with the petitioner's rights in this proceeding.

It is not contended by the respondent, and it could not be contended successfully, that this court should refuse the petitioner relief on the ground that he has failed to exhaust his remedies within the association. The by-laws of the association provide no remedy for a case like this. There is a provision in Article Ten for the reinstatement of a member who has been

suspended; but that applies only to the case of one who admits that he was suspended rightly. To avail himself of it, he must assume the regularity of his suspension, and must pay a membership fee, and pay one month's dues in advance. Moreover, one reinstated under this article cannot have the right of a member to receive benefits until the expiration of a month from the time of his reinstatement.

There being no right of appeal or other remedy under the by-laws, a majority of the court are of opinion that the petitioner is entitled to relief from this court.

*Peremptory writ of mandamus to issue.*