KNIGHTS OF PYTHIAS OF NORTH AMERICA, SOUTH AMERICA, EUROPE, ASIA, AFRICA, AND AUSTRALIA et al. v. GRAND LODGE OF KNIGHTS OF PYTHIAS OF NORTH AMERICA, SOUTH AMERICA, EUROPE, ASIA, AND AFRICA.

(Court of Appeals of District of Columbia. Submitted March 5, 1919. Decided May 5, 1919.)

No. 3193.

1. BENEFICIAL ASSOCIATIONS ⬅16—SUSPENSION OF LODGE BY GRAND LODGE —HEARING.

Assuming that the constitution of the Knights of Pythias entitles a subordinate lodge to notice before suspension, the requirement is sufficiently complied with where the Supreme Chancellor's suspension of the lodge was referred to a committee, which notified and heard the lodge before reporting its approval of the suspension to a convention which adopted the report.

2. BENEFICIAL ASSOCIATIONS ⬅16—SUSPENSION OF LODGE BY GRAND LODGE —GROUNDS.

The publication and general circulation by a subordinate lodge of the Knights of Pythias of a circular charging "shocking conditions," tyrannical usurpation of power, misappropriation of funds, etc., by the Supreme Lodge, *held* substantial ground for its suspension.

3. BENEFICIAL ASSOCIATIONS ⬅16—REVOKING CHARTER OF LODGE—SETTING ASIDE REVOCATION.

Where the constitution of the Knights of Pythias provides that the charters of subordinate lodges shall not be revoked, except after notice and hearing, action of a convention in revoking the charter of a lodge will be set aside, where no hearing was had on the question of revocation, although the lodge was notified of, and heard regarding, the suspension of its charter.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Grand Lodge of Knights of Pythias of North America, South America, Europe, Asia, and Africa against the Knights of

Pythias of North America, South America, Europe, Asia, Africa, and Australia, S. W. Green, Joseph L. Jones, and others. Decree for plaintiff, and defendants appeal. Reversed and remanded, with directions.

Henry E. Davis and James A. Cobb, both of Washington, D. C., for appellants.

James F. Minor, of Richmond, Va., and Clarence R. Wilson and Paul E. Lesh, both of Washington, D. C., for appellee.

ROBB, Associate Justice. This is an appeal from a decree in the Supreme Court of the District restraining appellants, defendants below, from giving further effect to a suspension of plaintiff, appellee here, and from making effective a resolution revoking plaintiff's charter. The decree further restrained the defendant order from attempting to collect any unpaid portion of a certain tax.

The Knights of Pythias of North America, etc., a District of Columbia corporation, hereinafter referred to as the order, consists of a Supreme Lodge, subordinate lodges, and individual members who for the time being are not attached to any Grand or subordinate lodge. The plaintiff, a Virginia corporation, is one of the Grand Lodges of the order, which is a fraternal beneficial association. The trouble between the order and the plaintiff lodge originated in a controversy as to the assessment and collection of a certain tax. It is claimed by the order that this tax was legally assessed and, moreover, that the plaintiff, having voted for its imposition and paid a part thereof, and promised payment of the balance, now is estopped from questioning its legality. The view we take of the case renders it unnecessary for us to consider these contentions.

The plaintiff, by unanimous vote, adopted a resolution which it caused to be printed in pamphlet form and copies thereof sent, not only to the order, generally, but to nonmembers, and also caused the resolution to be printed and circulated in its official organ, the Planet, having a large circulation among both members and nonmembers. The pamphlet contains the heading, "Shocking Conditions in the Supreme Lodge," and from the body of the pamphlet we reproduce the following:

"We have learned with profound regret, not unmixed with sorrow, of the violation of the fundamental laws which govern us and the tyrannical power exercised by the Executive Officers of the Supreme Lodge, of the political methods used upon the floor of the Supreme Tribunal to the end that flagrant violation of the constitutional rights and privileges of the knighthood, of the levying of onerous and unjust taxation, of the misrepresentations of facts and figures, of deception and of chicanery, of manipulation of figures, of misappropriation of funds as set forth in the financial statement of the Supreme Chancellor, Supreme Keeper of Records and Seal and the Supreme Master of Exchequer. * * * This constitutes a further charge of gross mismanagment, a charge of misappropriation of funds, a charge of a willul deception of a loyal and confiding knighthood on the part of certain Supreme Lodge officers including its official head. * * * The Supreme Lodge, under the erroneous advice of high salaried officials, has been misled to the extent of attempting to extend its power to levying taxes on members of the Order. * * * This action on the part of the Supreme officials constitutes an unwarranted, unlawful, tyrannical exercise of autocratic power. * * *"

This circular having come to the attention of the Supreme Chancellor of the order, on July 20, 1912, he issued his proclamation suspending the plaintiff Grand Lodge. After setting forth the "Shocking Conditions" circular, the Supreme Chancellor in the order of suspension said:

"These statements adopted by the Grand Lodge aforesaid are unwarranted, untrue, revolutionary and with no good intent. The published statements put in general circulation have a tendency to, and do engender feeling among the lodges and members which, if not discouraged or refuted by positive action, would disrupt the order. The preservation of the order is just as much at stake because of this unwarranted attack upon the Supreme Lodge and Supreme officers by a Grand Lodge or members within, as it were, because of the attack of strangers without."

The failure of the plaintiff "to pay the lawful taxes imposed when due" is mentioned as an additional reason for the suspension, but it is clearly apparent that the principal reason was the issuance of the circular in the circumstances mentioned.

The next convention of the Supreme Lodge of the order was held in Baltimore, Md., in 1913, and to that convention the Supreme Chancellor, in compliance with the constitution of the order, reported his action in suspending the plaintiff. An appeal already had been taken by the plaintiff from the action of the Supreme Chancellor and the matter was regularly referred to the Committee on Appeals and Grievances. Plaintiff appeared before that committee, was represented by counsel, and the committee reported to the convention that, "having examined the evidence and heard the arguments of counsel," it not only recommended that the action of the Supreme Chancellor in suspending plaintiff be approved, but that the charter of plaintiff be revoked. This report was adopted by the convention, and, in pursuance thereof, the proclamation was issued revoking plaintiff's charter.

Article 7, section 6, of the constitution of the order, which of course was binding upon plaintiff, provides that—

"Charters of Grand Lodges may be revoked by the Supreme Lodge, *and Grand Lodges suspended by the Supreme Chancellor* for nonconformity to the work, ceremonies or ritual adopted by the Supreme Lodge, for disobedience to its legal mandates, *and for improper conduct.*"

Article 8, section 9, provides that—

"Any Grand or subordinate lodge may be suspended or dissolved, and its charter or dispensation forfeited to Supreme or proper Grand Lodge: (1) For improper conduct."

After the second and third grounds are specified, it is further provided:

"But the charter or dispensation shall not be forfeited in either of the above cases until the lodge shall have been duly notified of its offense by the Supreme Grand Keeper of Records and Seal, and suitable opportunity given to answer the charges made against it."

The conventions of the order were to be held biennially, and for this reason, apparently, the Supreme Chancellor was given authority summarily to suspend Grand Lodges for specific reasons; but their char-

ters could not be revoked, except by the Supreme Lodge after notice and hearing. The difference between suspension and removal, which corresponds to suspension and revocation in the present case, is pointed out in Poe v. State, 72 Tex. 625, 10 S. W. 737. But, even if it be assumed that plaintiff was entitled to notice before suspension, the result is the same, for it had notice and opportunity to be heard before the order of suspension was approved and adopted by the convention. The constitution of the Order provides that such a hearing shall be had before the Committee on Appeals and Grievances, and that was the procedure in this case.

Was there substantial ground for the suspension of plaintiff, aside from its refusal to pay the tax in question? This is a fraternal association, and it must have been known to this plaintiff that the use of such intemperate language as was employed in this "Shocking Conditions" circular, even if confined to the membership of the order, would engender bitterness and discord and tend to disrupt the order. The general publication and dissemination of this circular by plaintiff could have sprung from but one motive, namely, the bringing of the order into contempt and ridicule. Every tenet of such an organization was violated in the sending broadcast of such a circular. If plaintiff had grievances, they might have been expressed at the proper time and place, and in temperate terms. Such a course would have accomplished any legitimate end and subjected plaintiff to no disciplinary measures. We are clearly of opinion that the suspension of plaintiff was justified and legal, but it does not appear that any hearing has been accorded it on the question of the revocation of its charter, and, since it was entitled to such a hearing, the decree of the court below in setting aside the revocation was correct.

The decree will be reversed, with costs, and cause remanded, with directions to enter a decree in conformity with this opinion.

Reversed and remanded.