## No. 31,456

WICHITA COUNCIL No. 120 OF THE SECURITY BENEFIT ASSOCIATION, W. C. BARRETT, ASA SHEARER, RAYMOND SMITH, as Trustees thereof; A. N. CROSS and H. L. BURTON, on behalf of approximately 1,100 other members of Wichita Council No. 120, *Appellees*, v. THE SECURITY BENEFIT ASSOCIATION, *Appellant*.

(28 P. 2d 976.)

Opinion filed January 27, 1934.

*George R. Allen, Richard F. Allen*, both of Topeka, *C. A. Matson, I. H. Stearns, E. P. Villepigue*, all of Wichita, and *A. W. Fulton*, of Chicago, Ill., for the appellant.

*Vincent F. Hiebsch, William J. Wertz* and *Haskell Jacques*, all of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action in mandamus by a subordinate council, its trustees and some of its members acting for themselves and others, of a fraternal benefit society to restore the charter of the subordinate council which had been suspended and dissolved by defendant's national executive committee. The trial court, after issues were joined and a trial, granted a peremptory writ, and defendant has appealed.

Defendant is a fraternal benefit society organized and operating under our statutes (R. S. 1931 Supp. 40-701 *et seq.*). It has a consti-

tution, by-laws, a national council, a national executive committee, and subordinate councils. Broadly speaking, its purposes are two (Bacon's Life and Accident Insurance, 4th ed., §§ 11, 12): First, to unite its members into subordinate councils for the promotion of benevolence, charity, social culture, education, care of the sick and needy, to establish and maintain hospitals and homes for its members, and aid its members in obtaining employment. Second, to provide for the payments of sick and accident benefits to members and of death benefits to their beneficiaries. The first of these general purposes is carried out largely by the subordinate councils under the advice and supervision of the national body and officers, and to obtain funds therefor subordinate councils are authorized to collect assessments from their members. The second general purpose is largely a matter of insurance for its members, for which assessments are collected, and is carried out by all units of the society.

By the constitution the national council is the governmental unit of the society and is composed of certain national officers and delegates. It is the law-making body of the society, having authority to amend its constitution and its by-laws. It shall hear and decide appeals, redress grievances, and has power to grant charters to subordinate councils, "also to suspend subordinate councils and to deprive them of their charters for violation of the constitution or laws of the association, or for disobedience to its commands." The national council shall provide for the national executive committee, composed of the national president, national secretary, and five other members to be elected by the national council. When the national council is not in session the national executive committee shall exercise all powers, rights and privileges of that body except that of amending the constitution and by-laws. An application for membership in the society contains this provision, among others:

"I further agree, if accepted as a member of the order, to be bound by its constitution and laws now in force or as the same may be hereafter amended or enacted, without reservation or exception as to the character or nature of such after-enacted or amended law."

A by-law (§ 130) provides that an applicant for membership in a subordinate council shall sign a "preliminary application card" in a prescribed form, bearing the recommendation of two members of the society. This should be presented with an initiation fee, if one has been fixed. The secretary shall read the card to the council,

whereupon the president shall appoint an investigating committee of three members. If that committee reports favorably the council shall proceed to ballot on the same. "If not more than two black-balls appear the applicant shall be declared elected." With reference to suspending or dissolving subordinate councils the by-laws read:

"Sec. 133. Any subordinate council may be suspended or dissolved by the national council, or by the national executive committee, and its charter forfeited for any of the following reasons:

"1. For improper conduct.

"2. For neglecting or refusing to conform to the constitution or the laws of the association, or the rules and regulations of the national executive committee.

"3. For neglecting to hold regular meetings as provided by law, unless prevented from so doing by some unforeseen circumstances.

"4. For neglecting or refusing to answer a complaint filed against it within a given time to be fixed in the notice.

"5. For printing the secret work, ritual, odes, or any of the supplies of the association, or causing the same to be done.

"6. For neglecting to bring to trial within thirty days any member of the council, when notified of charges by the national secretary or the national executive committee, as provided in section 58, laws of the association."

And section 133a of the by-laws reads:

"Sec. 133a. Whenever the national executive committee shall determine that it will be for the best interests of the association to do so, said national executive committee shall have the right to suspend a council and dissolve its charter for any of the causes set out in section No. 133, or for any other cause. This may be done without notice or hearing to the council or to the individual members thereof, and the executive committee shall be the sole judge as to whether or not the council should have notice and an opportunity to defend itself against said charges."

The by-law relating to appeals (§ 180) reads:

"Any member of the association may appeal to the national executive committee from the decision of the subordinate council upon any trial had, and to the national council from the decision of the national executive committee or national trustees, where trial is had before such committee or trustees."

The society has more than 1,600 subordinate councils located in the various states of the union, of which 304 are in Kansas and four are in Sedgwick county. One of these was Wichita Council, No. 120. It had functioned continuously for a number of years and had a membership of about 1,150, who paid monthly subordinate council dues of twenty-five cents each. It held meetings each week. It

had an active membership. At several of the meetings in April, 1933, discord developed, largely between the president of the council and four or five of the active members on the one side and the remainder of the active members on the other. Some rulings of the president were appealed from, and he was not sustained by the council. In four of such rulings he appealed, as the by-laws provided, to the national president, who sustained him in two of the rulings and overruled him in two. At the council meetings his conduct was criticized by some of the members, and there was disorder. We shall not state the details of these matters nor make any intimation as to who was to blame. It is sufficient to say that the president of the subordinate council wrote a letter, perhaps more than one, to the national president. The contents of these letters are not disclosed by the record. On April 25, 1933, the national executive committee adopted a resolution, which reads in part:

"The national president called to the attention of the national executive committee communications passing between himself and some of the officers and members of Wichita Council No. 120.

"After giving consideration to all the papers and documents submitted to the national president, the following resolution was duly moved, seconded, and unanimously adopted, all members of the national executive committee being present:

"*Be it resolved,* That it is for the best interest of the association that Wichita Council No. 120 shall be suspended and its charter dissolved in accordance with section 133a of our laws for improper conduct of its members and for their refusal and neglect to conform to the constitution and laws, rules and regulations of the association and the rulings and directions of the national president and the national executive committee; and be it further

"*Resolved,* That it is for the best interests of the association that Council No. 120 be suspended and its charter dissolved without notice or hearing to either the officers or the individual members; . . ."

Other parts of the resolution provided for the transfer of the membership of the dissolved council No. 120, "so that the insurance protection of each member shall be in no way endangered"; provided to whom they should pay assessments until their membership had been placed in some other council; provided for the turning over of the money and other property of the council to some one authorized by the national president to receive it, and the proportionate share of each member to be paid to the council in which his membership was placed. In harmony with that resolution, about 1,100 of the members of Wichita Council No. 120 were transferred by the national officers to a new subordinate council at Wichita,

No. 4152, the charter for which had been issued by the national executive committee on April 21, 1933. The other forty or fifty members of Wichita Council No. 120 were transferred to Topeka Council, No. 4, distant about 175 miles from Wichita. The members were notified of the dissolution of Wichita Council No. 120 and to what council their membership had been transferred, and were advised that if they desired their membership in some other council than that to which they had been transferred a national transfer card would be issued which they could present to the other council for the transfer of their membership. On being notified of the order of dissolution, the vice president, on proper request of members, called a meeting of the council, which authorized the employment of attorneys and the bringing of this action.

At the time of the dissolution of Wichita Council No. 120 it was under a written lease for a lodge room by which it was obligated to pay rentals for more than a year, and in addition thereto owned furniture and office and lodge equipment. It also had on hand $341.26 in cash, which, by the direction of the national executive committee, was turned over to the national president for distribution as the by-laws provide. The members of Wichita Council No. 120 whose membership had been transferred to Topeka Council No. 4 attempted to attend some of the meetings of the new Wichita Council No. 4152, but were refused admission.

After the hearing the trial court made findings as follows:

"Neither this court, nor any other court, has any right to interfere with the internal dissensions and strife of an organization of the kind involved as a party in this case. That the only function of the court is to see that the rights of the members are preserved intact, and that under the constitution and laws these rights have been violated. That in this case there was no notice of any charges. That no charges were preferred, nor was any hearing had prior to the passage of the resolution dated April 25, 1933, by which resolution the defendant, the Security Benefit Association, suspended Wichita Council No. 120, and dissolved its charter, pursuant to the terms therein. That this court is of the opinion that said section 133a is void, and that the action of the Security Benefit Association was arbitrary and unreasonable, and that Wichita Council No. 120 was entitled to notice and a hearing on the charges preferred against the council, upon which the action of the national executive committee of the Security Benefit Association is based. That said the Security Benefit Association may then proceed, by proper notice and a trial with a proper hearing, to determine the matters involved in its own organization, in such a way that the plaintiffs may be permitted to exhaust their remedies under the constitution and by-laws of the order. That the defendant, the Security Benefit Association, should be given ten (10) days to comply with this order."

A peremptory writ, which conformed to these findings, was issued.

Turning now to the legal questions argued. Appellant contends the trial court erred in holding by-law section 133a to be void. This by-law is composed of two sentences. The first authorizes the national executive committee to suspend a council and dissolve its charter "for any of the causes set out in section No. 133, or *for any other cause.*" This sentence does not authorize the national executive committee to suspend a council or dissolve its charter at the pleasure of the national executive committee. It is authorized to take such action only for cause. It is not contended the action taken was "for any of the causes set out in section No. 133." The phrase "or for any other cause" still authorizes action only "for . . . cause." The word "cause" as here used means what is sometimes spoken of as legal cause, or just cause, a substantial, reasonable or just cause, related to matters of a substantial nature pertaining to duties or obligations imposed. (*Brokaw v. Burk,* 89 N. J. L. 132, 98 Atl. 11; *Moulton v. Scully,* 111 Me. 428, 89 Atl. 944; *Rhea County v. White,* 163 Tenn. 388, 45 S. W. 2d 375; *People, ex rel. Keech, v. Thompson,* 94 N. Y. 451; *State v. Common Council,* 53 Minn. 238, 55 N. W. 118; *State, ex rel., v. Walbridge,* 69 Mo. App. 657.)

The word carries with it the necessity of an appropriate charge, or accusation, notice of the charge with an opportunity to present a defense, and a fair hearing before an official or tribunal authorized to conduct such a hearing, and a decision on the merits of the charge. (See authorities *supra.*) This is the meaning given the word when used in the constitution or by-laws of a social or fraternal society authorizing expelling a member for cause. (*Barry v. The Players,* 132 N. Y. Supp. 59, 204 N. Y. 669.) In *Lindley v. State Board of Administration,* 117 Kan. 558, 231 Pac. 1026, this court had before it the distinction between authority to remove for cause, and at pleasure, and it was recognized that removal for cause required a charge, notice and hearing, while removal at pleasure did not.

The second sentence in section 133a purports to authorize the national executive council to suspend a council and dissolve its charter "without notice or hearing to the council or to the individual members thereof." This is in direct conflict with the first sentence of the section, also with section 133, and attempts to grant power to the national executive council in excess of that granted to the national council by the constitution of the society, which authorizes some action only "for violation of the constitution, the laws of the asso-

ciation, or for disobedience to its commands." When a constitution of a society such as this provides how it shall be amended, it cannot be amended by a by-law (*Kirkpatrick v. Abrahams,* 98 Kan. 685, 159 Pac. 13). We have here the national executive committee, a body inferior to the national council, purportedly authorized to do something the national council itself could not do. It is important to remember this on the question of the necessity for appeal within the society, later to be discussed. At this point we simply note the conflict and point out the general rule that when there is a conflict between provisions of the laws of a society, such as this, they will be construed as favorably to the member or subordinate council and against the supreme body as can reasonably be done. (*United Workmen v. Smith,* 76 Kan. 509, 92 Pac. 710; *Tucker v. Kirkpatrick,* 106 Kan. 881, 189 Pac. 946; *Ellis v. Fraternal Aid Union,* 108 Kan. 819, 197 Pac. 189; *Lawson v. Brotherhood of American Yeomen,* 138 Kan. 248, 254, 25 P. 2d 344.)

Passing this thought, we go directly to the question of the validity of a provision in the by-laws of a fraternal benefit society which purports to authorize some superior committee or officers to suspend a subordinate council and dissolve its charter without a charge, notice and hearing. Our statute (R. S. 1931 Supp. 40-705) provides fraternal benefit societies may make by-laws "not inconsistent with the constitution of this state or the United States."

Generally speaking, both our federal (5th and 14th amendments) and state (bill of rights, § 18) constitutions provide for due process of law. Whatever may be said of the exact definitions of that term, said to be synonymous with "the law of the land" (12 C. J. 1189), it is well settled that its "essential elements . . . are notice, and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." (6 R. C. L. 446.) In 12 C. J. 1190 it is said:

". . . due process of law means a law which hears before it condemns, which proceeds on inquiry, and renders judgment only after trial; . . ."

And see cases there cited and those collected, American Digest System, Constitutional Law, section 251.

In Bacon on Life and Accident Insurance, 4th ed., section 106, it is said:

"All by-laws, to be valid, must have three essential and vital qualifications: (1) they must be consistent with the charter or articles of association; (2)

they must not be in conflict with any provisions of statute or common law, and lastly (3) they must be reasonable."

And in section 109 it is said:

"A by-law which provides for the expulsion of a member without notice is void, because unreasonable; and so are provisions for forfeitures without notice or opportunity to be heard; . . ."

The authorities uniformly hold that a member of a benefit society is entitled to notice and a hearing before his suspension or expulsion. See cases collected in the annotation on this point in 27 A. L. R. 1512.

In *Harris v. Aiken*, 76 Kan. 516, 92 Pac. 534, it was held that such a member may be expelled "if these conditions exist: That he is charged with conduct for which his expulsion is a proper penalty if he be guilty; that he has reasonable notice of the charge and opportunity to defend himself; that he is given a fair hearing; that a decision is rendered against him in good faith; and that he is not denied the benefit of any special rule that may exist relating to the matter."

There is no distinction in principle between suspending or expelling a member and suspending or dissolving a subordinate council. (*Grand Grove A. O. of D. v. Duchein*, 105 Cal. 219, 38 Pac. 946.) The charter of the subordinate council and the constitution and by-laws of the parent organization constitute the agreement between them, as similar instruments do between the society and its members. (*Knights of the Ku Klux Klan v. Francis*, 79 Cal. App. 383, 249 Pac. 539; *Scott v. Donahue*, 93 Cal. App. 126, 269 Pac. 455.) This has been recognized by this court in *Kirkpatrick v. Abrahams*, 98 Kan. 685, 159 Pac. 13; *Tucker v. Kirkpatrick*, 106 Kan. 881, 189 Pac. 946, 107 Kan. 541, 192 Pac. 834, and perhaps other cases.) In *Goodman et al. v. Jedidjah Lodge, No. 7, etc.*, 67 Md. 117, 9 Atl. 13, it was held:

"The courts can never recognize as valid any rule or law (of a benefit society) so made the effect of which is to *confiscate property*, or arbitrarily to take away *property rights* from one set of members and give them to another set; . . ."

See, also, *Supreme Lodge, etc., v. L. A. Lodge No. 386*, 177 Cal. 132, 169 Pac. 1040; *State Grand Lodge of Pa. Appel. v. Morrison*, 277 Pa. 41, 120 Atl. 869; *Hampton v. Supreme Lodge K. of P.*, 161 S. C. 540, 159 S. E. 923; *Hall v. Supreme Lodge Knights of Honor*, 24 Fed. 450; *Knights of Pythias, etc., v. Grand Lodge, K. P., etc.*, 258 Fed. 275.

Reëxamining the abstracts, we find that the validity of a by-law, in effect the same as the second sentence in section No. 133a, was involved in the case of *Tucker v..Kirkpatrick,* 106 Kan. 881, 189 Pac. 946; Id. 107 Kan. 541, 192 Pac. 834. The pleadings in that case disclose that the national executive committee, acting under a by-law which purported to give it authority to suspend and dissolve a subordinate council without notice or hearing, passed a resolution suspending and dissolving Topeka Council No. 1, which was one of the subordinate councils of the society. Members of the society went into district court to enjoin the society from carrying out that resolution. Such an order was granted, but it provided that it should "not be held to prevent the defendants herein from proceeding in the manner authorized by the *valid* provisions of the constitution and by-laws . : . and after notice and an opportunity for hearing as provided in said by-laws, to hear any complaints or charges against said Capital Council No. 1 which may be duly filed, and from forfeiting and canceling the charter of said council if they shall find under the by-laws and the evidence offered at such hearing that said charter should be so forfeited.. . : ." Thereafter charges were filed against Capital Council No. 1, notice was given and a hearing had, upon which the national executive committee found the subordinate council to be guilty as charged, and entered an order suspending and dissolving it. Thereafter members of the subordinate council brought an original proceeding in mandamus in this court to compel the association to restore the charter of the subordinate council. As that proceeding was presented in this court, the validity of the by-law under which the national executive committee acted in dissolving the council without notice in the first instance was not presented for determination. The parties appear to have been satisfied with the ruling of the district court on that question. While the invalidity of the provision of the by-law purporting to authorize the national executive committee to suspend and dissolve a subordinate council without charges, notice or a hearing appears to have been determined by the district court only, and for that reason is not a controlling precedent, it accords with our conclusion here.

Appellant contends that the challenged sentence in section 133a of its by-law should be sustained because it was agreed to by all of the members of Wichita Council No. 120 when they became members of the society. The application of each contained a clause

by which the members agreed to the constitution and by-laws as they then existed, or might thereafter be amended. We are not advised whether the by-law in question existed when subordinate council No. 120 was chartered, or whether it has been since added or amended, but perhaps this is not important. Such agreements always carry with them the reservation that such by-laws be reasonable, and necessarily carry with them the further reservation that they are not inconsistent with the constitution of the United States or of this state (R. S. 1931 Supp. 40-705). The question of the extent to which a member is bound by reason of a provision of this kind in his application has been before this court many times. When the by-law in question, as it originally existed or as it was later amended, was one which the society had a right to pass, and was reasonably necessary to carry out its purposes, it was upheld. (*Reno Lodge v. Grand Lodge*, 54 Kan. 73, 37 Pac. 1003; *Supreme Lodge v. Raymond*, 57 Kan. 647, 47 Pac. 533; *Miller v. National Council*, 69 Kan. 234, 76 Pac. 830; *Maccabees v. Nelson*, 77 Kan. 629, 95 Pac. 1052; *Uhl v. Life Association*, 97 Kan. 422, 425, 155 Pac. 926; *Dey v. Knights & Ladies of Security*, 113 Kan. 86, 213 Pac. 1066; *Guy v. Modern Woodmen*, 128 Kan. 745, 747, 280 Pac. 756), and where those conditions did not exist it was held invalid. (*Pyramids v. Drake*, 66 Kan. 538, 72 Pac. 239; *Hart v. Annuity Assoc.*, 86 Kan. 318, 120 Pac. 363; *Kirk v. Aid Association*, 95 Kan. 707, 149 Pac. 400; *Hannon v. United Workmen*, 99 Kan. 734, 163 Pac. 169.) In *Coffman v. Security Benefit Association*, 131 Kan. 328, 291 Pac. 753, it was held that an agreement to a by-law not authorized by statute is ineffectual.

In determining whether a subordinate council should be suspended or dissolved the national executive committee sits in a quasi-judicial capacity. (*Grand Grove, etc., v. Garibaldi Grove*, 130 Cal. 116, 62 Pac. 486.)

"Hearings of this character are quasi judicial. They ought to be conducted in a spirit of impartiality, without prejudice, and a reasonably full opportunity ought to be given to learn the nature of the charges preferred and to present evidence and arguments in reply." (*Correia v. Portugese Fraternity*, 218 Mass. 305, 308, 105 N. E. 977.)

The conduct of such a committee is not to be determined by close adherence to the forms of legal procedure. It is sufficient if those essentials and that procedure are required which are fair and make for justice, rather than form. (*Gervasi v. Societa Guisippi Gari-*

*baldi,* 96 Conn. 50, 112 Atl. 693. See, also, *Flynn v. Brotherhood of Railroad Trainmen,* 111 Kan. 415, 207 Pac. 829.)

Appellant argues that since the national executive committee and the national officers, in dissolving Wichita Council No. 120, made provision to preserve the insurance benefits of the members, that no property rights are involved, hence that the court should not interfere. It is well settled that courts do not interfere in the internal affairs of benefit societies, particularly with respect to the discipline of its members or of its subordinate councils, when property rights are not involved. But can it be said there were no property rights involved here? On this point appellant cites and relies strongly on the case of *Lone Star Lodge K. & L. of H. v. Cole,* 62 Tex. Civ. App. 500, 131 S. W. 1180. This was an action by individual members of a local lodge of a benefit society against the officers of the local lodge and of the grand lodge to enjoin them from interfering with the affairs of the lodge, alleging that an order dissolving the lodge was invalid. A verified answer was filed which put in issue all material allegations of the petition other than formal matters. The hearing was had upon the verified pleadings. Plaintiffs introduced no evidence. The trial court denied the injunction. This was held proper under the state of the proceedings—in fact was the only judgment which could have been entered. What is said in the opinion about property rights is taken from the pleadings only. The only allegation in the petition respecting property rights was in regard to the paraphernalia used in the secret meetings of the lodge, which seems to have been of little or no value for any other purpose. There was no allegation that plaintiffs, as members, had any individual right of ownership in that property, and from the allegations of the verified answer it appeared they had none. In that situation the court properly held that property rights were not involved.

In the case before us the record discloses that Wichita Council No. 120 had an income of about $285 per month from the subordinate council dues of its members. Since there is no intimation to the contrary we assume this money was used as provided by the constitution and by-laws of the society, namely, in payment of the operating expenses of the subordinate council, in caring for its sick and needy members, and providing for them employment. Its trustees had executed a long-time lease on a council hall, under which they were obligated to pay rent for more than a year after the order of disso-

lution. It owned lodge and office furniture, paraphernalia and equipment in a substantial amount, although its value was not found; indeed, the record does not disclose what became of it. It had cash on hand, after paying its current obligation, of $341.26. One of the main purposes of the society was to unite all of its members in subordinate councils, not only for the purposes of benevolence, charity, social culture, mental improvement and education, but to "care for the sick and needy . . . · and to aid its members in obtaining employment, and to assist each other in business." The council had a right to exist and function for these purposes (*Knights of Ku Klux Klan v. Francis*, 79 Cal. App. 383, 249 Pac. 539) until it was lawfully dissolved, and the members of the council, under such rules and regulations as exist in subordinate councils applicable thereto, had a right to material benefits in time of sickness or need or if unemployed, which were, or might be, just as vital and important to them as would be their insurance paid to their beneficiaries in the event of their death. There should be no quibbling over classifying these rights as property rights. The resolution of the national executive committee in this case dissolving the subordinate council did not preserve those rights to the council, nor purport to do so. Neither can it be said it preserved them to those members whose membership was transferred to Topeka Council No. 4, 175 miles from their homes. It is true they were given permission to withdraw their membership from that council, but in presenting that to any other subordinate council they would have to sign and present an application for membership and be recommended by two members of that subordinate council, and accompany this with the amount of the initiation fee required by that council. This application would be referred to an investigating committee and, if favorably reported, would be balloted upon. If two blackballs appeared in the ballot the application would be rejected. This would be a troublesome and expensive procedure at the best, and might be futile. The effect of what was done with respect to the members transferred to the Topeka council was to remove or expel them from membership in a subordinate council from which, as a practical matter, they could derive the material benefits accruing under the constitution and laws of the society to members in a subordinate council. A similar question was before the court in *Tucker v. Kirkpatrick*, supra. After the opinion was handed down (106 Kan. 881, 189 Pac. 946) a motion for rehearing was filed in which complaint

was made that the court did not give sufficient consideration to the fact that property rights were involved. In disposing of that question this court said (107 Kan. 543, 192 Pac. 834):

"The case would have been out of court long ago if it had not been recognized that property rights are involved."

That proceeding involved members only of the subordinate council, not the council itself. This proceeding involves both the council and members. Therefore the more reason in this case to say that property rights are involved.

Appellant contends plaintiffs did not exhaust their right of appeal to the national council of the society. When the constitution and laws of a benefit society require an appeal within the society from the ruling of an inferior officer, committee or unit of the society, and such ruling and the procedure therefor have been had in conformity to valid provisions of such constitution and laws, the party aggrieved must exhaust his remedies within the society before resorting to the courts. (*Barthell v. Zachman,* 162 Tenn. 336, 36 S. W. 2d 886; *Conroy v. Railroad Trainmen,* 102 Kan. 757, 171 Pac. 1161.) But where the right of appeal is permissive only, the aggrieved party is not compelled to exhaust his right of appeal (*Supreme Lodge v. Raymond,* 57 Kan. 647, 47 Pac. 621; *Order Select Friends v. Dey,* 58 Kan. 283, 49 Pac. 74), although the court may, in its discretion, require him to do so (*Reno Lodge v. Grand Lodge,* 54 Kan. 73, 37 Pac. 1003; *Tucker v. Kirkpatrick,* supra; *Flynn v. Brotherhood of Railroad Trainmen,* supra), and where the ruling complained of was arbitrarily made and seriously affects substantial rights, contrary to any valid law of the society, the courts are open to an aggrieved party. (*Universal Lodge v. Valentine,* 134 Md. 505, 107 Atl. 531; *Barthell v. Zachman,* supra; *Hall v. Supreme Lodge Knights of Honor,* 24 Fed. 450.) And certainly, where no appeal is provided by the laws of the society from the ruling complained of, the aggrieved party cannot be charged with failure to exhaust his right of appeal. (*Horgan v. Metropolitan Mutual Aid Assoc.,* 202 Mass. 524, 88 N. E. 890; *Modern Woodmen v. Taylor,* 67 Kan. 368, 71 Pac. 806.) Section 180 of the by-laws, previously quoted, permits aggrieved members to appeal to the national council from a ruling of the national executive committee "where trial is had before such committee." Here there had been no trial before such committee. This distinguishes the case from *Tucker v. Kirkpatrick,* supra. The by-law gives the subordinate council no right of appeal. (See

*Golden Star Lodge No. 1 v. Watterson,* 158 Mich. 696, 123 N. W. 610.) This distinction was pointed out in *Tucker v. Kirkpatrick,* 107 Kan. 541, 542, 192 Pac. 834. Since no right of appeal was given for the grievance complained of here, plaintiffs cannot be held to have failed to exhaust their right of appeal.

Finally, appellant argues that the individual members of the national executive committee, some of whom are nonresidents of the state, should have been made parties defendant. Since this committee acts only for and on behalf of the society, and the society, being "a body corporate . . . capable of suing and being sued" (R. S. 1931 Supp. 40-705), having appeared and defended the action, the individual members of the committee were not necessary parties defendant.

The judgment of the court below is affirmed.

HUTCHISON, J., not sitting.