THE MADISON BANK v. W. M. PRICE *et al.*

No. 15,523.    (100 Pac. 280.)

SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Transfer of Stock on the Books.* It is the statutory duty of a bank of this state to make transfers of its stock upon its books pursuant to a transfer by the registered holder unless such holder is indebted to it on a matured and unpaid obligation or unless the bank is insolvent or its capital is impaired.

2. —— *Same.* If the conditions named do not appear the duty is purely ministerial, the bank has no discretion in the matter, and it has no concern with the consideration or motive of the transfer.

3. —— *Suit in Equity to Compel Transfer.* If a small interior bank of this state wrongfully refuse to make a transfer of its stock on its books the transferee has no adequate remedy at law and may maintain a suit in equity to compel the transfer to be made.

Error from Greenwood district court; GRANVILLE P. AIKMAN, judge. Opinion filed January 12, 1909. Affirmed.

*R. M. Hamer,* and *W. C. Harris,* for plaintiff in error.

*S. F. Wicker, F. S. Jackson,* and *L. B. Kellogg,* for defendants in error.

19—79 KAN.

The opinion of the court was delivered by

BURCH, J.: The Madison Bank, of Madison, Kan., has a capital stock of 180 shares, of the paid up par value of $100 each. Its cashier, W. O. Waymire, owned 49 of these shares, two of them standing in the name of E. H. Melbourne. Waymire became involved in a controversy with the bank and resigned his office. Immediately afterward he and Melbourne assigned in due form the certificates for the 49 shares to W. M. Price and W. S. Fallis, the plaintiffs. Price was cashier and active business manager of the First National Bank of Madison, a rival banking institution. Price and Fallis demanded transfers of the stock upon the books of the defendant and were refused. Each one then brought a suit in equity to compel a transfer, and a certification of the transfer when made to the bank commissioner. The two actions were consolidated before trial. Meantime the defendant had sued Waymire, claiming that he was indebted to it in a large sum on account of certain transactions connected with his management of its affairs while he was cashier, and claiming a lien upon his stock because of such indebtedness. The bank moved that this action be consolidated with the Price and Fallis suit, but the motion was denied. Likewise a motion to make Waymire a party to the Price and Fallis suit was denied. A demurrer to the petition of Price and Fallis was overruled, and issues were made up between them and the defendant as follow:

The petition alleged the sale, written assignment and delivery of the certificates by the registered holders; demand and refusal to transfer; that the registered holders were not indebted to the bank on any matured and unpaid obligation, that it was not insolvent, and that its capital was not impaired; that the defendant was engaged in the conduct of the banking business, had accumulated a large surplus and pos-

sessed a large fund of undivided profits; that the market value of the stock in controversy could not be ascertained; that under the statutes of Kansas and the by-laws of the bank no transfer of stock is valid until registered on the books of the corporation; that plaintiffs were being denied the rights and privileges attaching to ownership of corporate stock; and that no remedy at law was adequate to their needs.

The answer charged that the transfer of the stock was made to injure the defendant and to obtain for the Price bank a monopoly of the banking business at Madison, in violation of the antitrust laws; that the assignment was made without consideration, was colorable only, and was made to evade a lien on the stock in favor of the defendant for Waymire's indebtedness; and set up the facts upon which it was claimed an indebtedness and consequent lien arose.

The reply denied that Waymire was indebted to the defendant, and pleaded waiver, estoppel and ratification on the part of the defendant in respect to all the transactions upon which the claim of a debt and lien was predicated.

Motions to strike out, to make more specific and to state separately, directed against the reply, were denied, and the issues were sent to a referee for trial. At the trial the referee rejected evidence relating to the consideration and purpose of the transfer, admitted certain evidence over the defendant's objection, and found all disputed facts in favor of the plaintiffs. The report of the referee was approved, judgment was rendered accordingly, and a motion for a new trial was denied. The defendant prosecutes error.

The substantial legal question presented is whether the petition states a cause of action; and in considering this question defenses to the suit are not involved. Its solution depends upon the right exhibited in the plaintiffs, the duty of the defendant, and the limitations, if

any, upon the authority of the court to grant the relief prayed for.

On the face of the petition the plaintiffs' right is clear. It rests upon possession of the certificates of stock under a formal written assignment by the registered holder. It is not even clouded by equities or embarrassed by rights residing in other persons.

In the recent case of *Faulkner v. Bank*, 77 Kan. 385, 94 Pac. 153, it was shown that banking is a business affected with a public interest, which extends to the registration of transfers of stock. The banking act (Laws 1897, ch. 47; Gen. Stat. 1901, ch. 11a) contains elaborate provisions regulating the subject, which, fairly interpreted, make it the duty of a bank to record transfers of its stock on its books and to certify such transfers to the bank commissioner immediately. The only condition is that no stock shall be transferred on the books of the bank without the consent of the directors if the registered holder is indebted to the bank upon any matured and unpaid obligation, and that no such transfer shall be made at all when the bank is in a failing condition or when its capital is impaired. (Laws 1897, ch. 47, § 52; Gen. Stat. 1901, § 458.) These conditions are negatived in the petition. Therefore the duty of the bank is plain, is purely ministerial, and is one enjoined by statute.

The defendant argues that the plaintiffs had but one remedy open to them and that was an action for damages. The courts have recognized two others—an action of mandamus and a suit in equity. (1 Cook, Stock & Stockholders & Corp. Law, 3d ed., § 389; 10 Cyc. 605, 609; 26 Cyc. 348.) In respect to the remedy by mandamus, it is said in volume 1 of Cook on Stock and Stockholders and Corporation Law, section 390:

"The authorities are in irreconcilable conflict on the question whether a mandamus lies to compel a corporation to allow a registry on its books of a transfer of stock. The weight of authority holds very clearly that mandamus will not lie under such circumstances. This

rule is based largely on the historical origin of the writ of mandamus, and on the theory that the stock of a private corporation has no peculiar value and may be readily obtained in open market or fully compensated for in damages. It is doubted, however, whether these reasons will be sufficient to restrain the manifest tendency to enlarge the scope of this writ, particularly with reference to stock transactions. There is a strong line of decisions which holds that a mandamus lies to compel a corporation to allow a registry of a transfer of stock, particularly where the corporation has no good and sufficient reason for refusing the registry."

In volume 10 of the Cyclopedia of Law and Procedure, at page 608, Judge Seymour D. Thompson said: "The inadequacy of the remedy at law and the denial of a remedy by a mandamus have given rise to the remedy in equity."

Therefore a conflict in the authorities appears respecting the question whether the remedy at law is adequate. If it is adequate it may be assumed that equity will not interfere. What is the fact in cases like this one?

It needs no witness to testify that the stock of small interior banks of this state is not found listed in general market reports. Nor is such stock a current commercial commodity in the locality where the bank is situated. Its real value depends upon many fluctuating factors which can not be established in dollars and cents. The book value is rarely, if ever, the actual value, and the consideration of sales is determined by the needs and desires of seller and purchaser rather than by any market or other standard of price. Besides this, the ownership of such stock is attended with certain well-recognized privileges and advantages, which enhance its value but which are not measurable in money. Therefore there is no fair or just way of arriving at the actual pecuniary damages a party would suffer if deprived of the registration of his stock. Beyond this, however, such stock has peculiar characteristics of its own which make it specially desirable. It

gives the owner the right to be admitted into the corporation, to share in its government, and to participate in the exercise of its franchises.   It is idle to say that he can take damage money and go out and possess himself of an equal number of shares of the same stock. If he could the bank might not allow them to be transferred.   It is just as idle to say that he can satisfy his desires with other shares of other stock equally as good. Therefore it is not only inequitable and unjust that a shareholder should be compelled, at the caprice of the bank, which has no rights of its own in the premises, to market stock which he has just purchased, but the remedy at law for a refusal to register a transfer is inadequate.

There is little more in the case.   Waymire was not a necessary party to the suit.   The court could and did, without embarrassment, determine the facts relating to his claimed liability to the bank without him.   It is always a matter of discretion with a court whether it will consolidate separate actions, and the discretion was not abused here.   Neither the court nor the parties had any trouble in ascertaining or following the issues set up in the reply.   The referee found the facts with reference to some of the immaterial matters pleaded in the reply, but the district court no doubt disregarded the findings, as this court does, and all other findings appear to have been made upon the merits of the evidence supporting them.   It is of course absurd to say that the ownership of 49 out of 180 shares of this stock by a rival banker would even tend to create a monopoly of the banking business at Madison, and the antitrust laws have no bearing upon the transaction.   The bank was not concerned with the motive or consideration of the transfer.   (*In re Klaus,* 67 Wis. 401, 29 N. W. 582; *State v. Consumers' Brewing Co.,* 115 La. 782, 40 South. 45.)   It had no right of its own, no discretion, and nothing to do but to perform a purely ministerial act. The evidence admitted over the defendant's objection

was relevant, and indeed necessary to a full explanation of the transaction to which it related. The findings of fact are abundantly sustained by the evidence.

The judgment of the district court is affirmed.