No. 37,520

Ellen B. Wentworth, *Appellee*, v. Russell State Bank, and L. W. Banker, John G. Deines and Clyde L. Carter, President, Vice-president and Secretary, etc., *Appellants*.

(205 P. 2d 972)

Opinion filed May 7, 1949.

*C. R. Holland,* of Russell, argued the cause, and *Walker Wm. Smith,* of Russell, was with him on the briefs for the appellants.

*John C. Woelk, Jr.,* and *Charles Boyle,* both of Russell, argued the cause, and were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was a proceeding in mandamus to compel a transfer of bank stock. An alternative writ was issued. The defendants filed their motion to quash that writ, and that motion being overruled, they have appealed to this court.

Insofar as it is necessary to note, the motion for the writ alleged the status of the parties; that the defendant bank was chartered in 1928 and E. M. Wentworth at the time of his death owned thirty shares represented by certificate No. 180 dated July 2, 1929, for one share; by certificate No. 183 dated December 5, 1929, for nineteen shares; and by certificate No. 186 dated February 24, 1930, for ten shares; that Wentworth died July 6, 1944, and his will was duly admitted to probate in the probate court of Russell county; that under its terms Ellen B. Wentworth, the plaintiff, was bequeathed the stock; that administration of the estate was closed

July 15, 1946, and the shares of stock were delivered to her pur-suant to the bequest and the orders of the probate court, and by reference the probate court records were made part of the motion; that the shares were not presented to the bank for transfer on its books until March 3, 1948; that on January 7, 1948, at the regular annual meeting of the stockholders of the bank, by a majority vote, the plaintiff dissenting, the bylaws were amended to read:

"SECTION 20.

"Where the title or ownership of any share of stock of the corporation passes by Will or inheritance to beneficiaries, such share or shares, may be issued to any fiduciary, heir, or legatee legally authorized to act; *Provided,* That such transfer does not conflict with Section 21 of these by-laws and such fiduciary, heir or legatee may receipt for such stock and shall be allowed to vote the same at any meeting of the Stockholders by furnishing the Bank proper credentials.

"No fractional shares of stock in this corporation shall be issued.

"SECTION 21.

*"Paragraph 1*

"No stockholder shall sell or assign any shares of stock except to Stock-holders of record on the books of the Bank, and who, in addition to being stockholders, shall have been bona-fide customers of the Bank for a period of not less than one year prior to said sale or transfer without first offering such stock to the Board at the price desired by the seller. Should the Board fail to accept such offer within five days from the date thereof, such stock-holder shall then be permitted to sell said stock to any person selected by him, provided, however, that said stock shall not be sold at a less price or on better terms than offered to the Board.

*"Paragraph 2*

"No stock shall be issued to surviving heirs at law or beneficiaries under Last Wills and Testaments of deceased stockholders or to Beneficiaries under Trusts, unless

"(a) Such heirs or beneficiaries reside within 50 miles of the City of Russell, Kansas.

"(b) If the heirs or beneficiaries reside more than 50 miles from the City of Russell, Kansas, then that either the decedent or the creator of the Trust shall have been actual bona-fide customers at least one year prior to the date of the death of the decedent or the creation of the trust, provided, that any such estate, trusts and/or beneficiaries shall have the right of disposing of such stock under the same limitations as imposed on living stockholders in Paragraph 1, of this section.

*"Paragraph 3*

"All stock issued after the date of the adoption of these by-laws shall have paragraphs 1 and 2 of Section 21 printed on the stock certificate and all outstanding certificates shall be surrendered by the owners for re-issu-

ance into new certificates. No dividends shall become payable on any shares without said parts of Section 21 printed thereon and all old stock certificates shall be surrendered by the present stockholders for re-issuance.

*"Paragraph 4*

"The secretary and treasurer shall not issue any new stock to any new owners without permission of the Board.

*"Paragraph 5*

"It is the intent of the Stockholders under the terms and provisions of this section to prevent more stock getting into the hands of non-resident owners who do no business with the bank."

It was further alleged that at a special meeting of the stockholders of the bank held February 10, 1948, for the purpose of amending the charter, by a majority vote, plaintiff voting in the negative, the charter was amended to include verbatim the language used in bylaw 20 and the first paragraph of bylaw 21 as quoted above. We note there is no allegation whether the amendments to the charter were ever submitted to the state banking board for its approval.

It was further alleged that plaintiff was eighty-three years of age and desired to secure a transfer of the stock to herself and her children and that she caused the certificates to be endorsed for one share to be transferred to her son, F. R. Wentworth, who resided in Russell, had done business with the bank for more than one year prior to her demand, but was not a stockholder of record; for one share to her daughter, Ruth, who resided in California, had not done any business with the bank within one year prior and was not a stockholder of record; and for twenty-eight shares to herself, and that she lived in Russell, did business with the bank, but was not a stockholder of record; that she presented the stock certificates to the officers of the bank and requested reissuance of the thirty shares as above set forth upon the original forms and free and unencumbered by the restraints, restrictions, limitations and inhibitions required under the amended bylaws and charter, and that the bank, through its officers, refused to make such a transfer, and that such refusal was wrongful, arbitrary, capricious, illegal and willful, and designed and intended to deny her the full use and enjoyment of her bank shares.

It was then alleged in detail that the amended bylaws limited her rights as to the class of persons who could take from her, restricted the price at which she could sell, denied her the right to

transfer her shares either by sale, gift or bequest, to her own children, or to procure a transfer to herself, and that she will suffer irreparable damage and injury if the bank is not directed to make the transfers requested; that the amended charter and bylaws constitute a deprivation of property without due process of law in violation of her rights under the fourteenth amendment to the constitution of the United States, a restraint of trade, devalue her stock by impairing and destroying the negotiability of her certificates of stock, deprive her of her right to freely bequeath, assign or sell her property, and of her constitutional rights under section 17 of the bill of rights to the constitution of Kansas, and that such charter and bylaws are willful, capricious, arbitrary, unreasonable, inequitable, unlawful and void.

The question presented by the appeal is whether the trial court erred in denying the motion to quash the writ. In discussing that question we shall refer to the parties as the plaintiff and the bank.

The bank first contends that the motion for the writ does not show upon its face that the plaintiff is entitled to maintain the action. The bank interprets the motion as alleging that E. M. Wentworth owned the thirty shares at the time of his death; that he died leaving a will under which the shares were bequeathed to the plaintiff; that the estate was closed and the stock was delivered to plaintiff who did not cause it to be promptly transferred to her; that the shares when tendered for transfer were not accompanied by a proper written assignment, proof of plaintiff's appointment as executrix, and a certified copy of the will and of the order of the court directing the transfer. It is to be borne in mind that a motion to quash an alternative writ is equivalent to a demurrer (see, e. g., *Citizens Utilities Co. v. City of Goodland,* 146 Kan. 172, 173, 69 P. 2d 318; *Kansas City Life Ins. Co. v. Banaka,* 150 Kan. 334, 336, 92 P. 2d 63; *Gafney v. Wilson County Hospital,* 150 Kan. 945, 96 P. 2d 613). Under familiar rules a petition attacked by demurrer is entitled to a liberal interpretation. We are of the opinion that the allegation that E. M. Wentworth owned the shares in his lifetime, bequeathed them to plaintiff by his will which was duly admitted to probate in the Russell county probate court and that on final settlement that court ordered the shares delivered to her, sufficiently alleged her ownership. It may be conceded the bank might be warranted in demanding proof of her right to a transfer of the shares before making such a transfer to the plaintiff, but in

view of G. S. 1947 Supp. 9-903, that bank shares "shall be trans-
ferred on the books of the bank in such manner as the bylaws
thereof may direct"; it would not seem to be a condition precedent
that plaintiff plead ·the bylaws and compliance, but on the con-
trary, if there was any defect in her tender, that it be pleaded as
a defense, for it is to be remembered she is not a stockholder of
record charged with knowledge of the bylaws—she merely wishes
to become one. What has been said applies also to the form of
assignment and the manner of execution. Once it is conceded that
the plaintiff is the owner of the shares, it follows she is entitled to
a transfer of them to her or as she directs. If the form or manner
of execution of the transfer does not meet the bank's requirements
the challenge should be made by answer and not by demurrer. In
our opinion it may not be said that the motion for the writ did not,
upon its face, show that the plaintiff was entitled to maintain the
action.

The bank next contends that the motion for the writ failed to show
facts sufficient to entitle her to the writ. Although it makes some
argument that the plaintiff inferentially admits the bank would
have issued certificates as requested by her, had they included the
amendments to the charter, it correctly states that the plaintiff is
not merely seeking transfer of the stock, but is seeking to compel
transfer and the issuance of new certificates to plaintiff and her
nominees upon the original forms used, and which shall not contain
the restrictive provisions of the bylaws as quoted heretofore. We
pause here to note that the forms of certificates issued to E. M.
Wentworth contained a provision that before the stock could be
sold it must be offered to the board of directors. That particular
restriction is not the one presently in issue, and is not one of those
to which plaintiff objected when she tendered her stock for transfer
and what is later said does not refer to it. Her objection was to
amendments adopted in 1948 and those are the ones to which we refer
hereafter. The question actually presented is whether the amend-
ments to the bylaws and charter are effective and binding upon the
plaintiff. If they are, she is not entitled to the form of certificates
demanded. If they are not, she is so entitled.

The bank premises its argument with a statement that the legis-
lature, by Laws 1939, ch. 152, adopted a general corporation code,
and that the bank comes under its provisions. The act appears as
G. S. 1947 Supp. ch. 17, art. 24 to art. 45, both inclusive. References

hereafter made are to chapter and section number. Our attention is first directed to 17-4501 which states that all private corporations shall be governed by the act, except that it shall not be deemed to supersede laws under which corporations of particular classes, including banks, have been created and concerning which particular provisions have been made, but that where the act is not inconsistent, it shall be construed as supplemental to such laws and not in derogation thereof. Apparently assuming consistency, a matter later mentioned, the bank directs attention to 17-3213 that every holder of stock shall have a certificate signed as therein provided, to 17-3215 that the certificate shall contain certain information and shall state any other provisions which may be required either by law or by the articles of incorporation, to 17-3001 (*G*) authorizing the corporation to adopt bylaws not inconsistent with the constitution and laws of the United States or of this state, among other things, "for the certification and transfer of its stock," and to 17-3107 providing for the adoption of bylaws under conditions stated. No particular comment on the above sections is necessary. Our attention is also directed to 17-2803 which provides that the articles of incorporation may also set forth (*B*) any provision the incorporators may choose to set forth for conduct of the affairs of the corporation, and "creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders . . . provided, such provisions are not contrary to the laws of this state," and (*F*) "A provision reserving to the corporation and existing shareholders the right to purchase and acquire the stock of a selling stockholder before sale to a nonstockholder." The only provisions of the statutes pertaining to banks and banking to which the bank directs attention are G. S. 1947 Supp. 9-1114, that the board of directors shall consist of not less than five nor more than twenty-five members, all of whom shall be stockholders, and that a majority shall be residents of the county or adjoining county, and to 9-1117 that no person shall be a director unless he be the owner of common stock of a par value of $500 which shall not be pledged, hypothecated or assigned in any way.

From all of the above it is argued that the amendments to the charter and bylaws have a statutory foundation.

Passing for the moment any provision of the statutes pertaining to banks and banking, we are of the opinion that neither bylaw 20 or bylaw 21, paragraph 1, which were incorporated into the charter

of the corporation, are authorized by the provisions of the general corporation code. Lengthy discussion is not needed to demonstrate that there is no provision of the general corporation code which authorizes a limitation on the rights of prior existing stockholders or limiting the title or ownership of their shares passing either by will or inheritance as contemplated in the first amendment, or that prevents the owner or his heir or legatee from giving away or selling the same, without first making an offer to the board (presumably the board of directors) and if that board refuse, to some other person on no better terms. Just how an owner could give his stock to his child either by present, gift, will or inheritance without offering it to the board on the same terms does not appear. Further, the general corporation code 17-3004 prohibits a corporation from acquiring its own stock except under conditions not of present importance. True, the present amendment says "Board" and that means either the board of directors or it means nothing. But the board is only the agent of the corporation and as such is an ineligible purchaser. If it was intended to mean the individual members of the board the provision would be contrary to the provisions of 17-2803 *F*. Nor can it be argued that the board would purchase for existing stockholders, for that is reading into the amendment something that is not there.

On the general power of a corporation to purchase its own shares, and holding it may not do so, see *Steele v. Telephone Association*, 95 Kan. 580, 148 Pac. 661.

Insofar as the amendments to the bylaws are concerned, and with reference particularly to the shares outstanding prior thereto, bylaw 21, paragraph 2, restricts descent of property and places restrictions thereon in a manner that finds no basis in the corporation code, and in violation of property rights as fixed by the probate code.

Insofar as amendment to bylaw 21, paragraph 3, is concerned, not much need be said. There is no statute which pretends to authorize it and that its effect is to take property without due process of law hardly seems debatable.

Even though the amendments to the charter and bylaws could be justified under the general corporation code, they still would have to meet the requirements of the statutes pertaining to banks and banking (Laws 1947, ch. 102, G. S. 1947 Supp. ch. 9, art. 7 to art. 20, both inclusive). Under this act the charter must be approved by the state banking board. (Prior to 1947 approval was

by state charter board, G. S. 1935, 9-101.) Under the entire act extensive provisions are made for listing of stockholders and liabilities of stockholders, but we note only 9-903 which provides that stock be deemed personal property and shall be transferred on the books of the bank in such manner as the bylaws thereof may direct, but that under conditions stated and not of present importance there shall be no transfer; 9-1112 which provides that no bank shall acquire any of its shares, except upon conditions not here applicable; and 9-907 which provides for the sale of the stock of delinquent stockholders.

The substance of 9-903 has been the law of this state for many years. (See Laws 1897, ch. 47, § 52, appearing as G. S. 1935, 9-153.) In *Bank v. Price,* 79 Kan. 289, 100 Pac. 280, an action in equity to compel transfer of bank shares was under consideration, and it was there held that it was the statutory duty of a bank to make transfers of its stock upon its books, unless the registered holder was in-. debted to it or unless the bank was insolvent, as provided in the above statute, but if the restrictive conditions did not appear the bank had no discretion in the matter. In that case it was also said that the person seeking transfer did not have an adequate remedy by action for damages and might maintain an action of mandamus or a suit in equity. There is no provision of the banking act which authorizes any limitation on ownership of shares of stock. The statutory provision for transfer on the books of the bank in such manner as the bylaws may direct, refers to the manner of making the transfer and does not confer power on the stockholders to make a provision that before stock may be transferred it must be first offered to the board of directors on the same terms as to another transferee.

No separate discussion of 9-1112 is necessary for what has been said previously as to sales to the board under the general corporation code also applies here.

Under 9-907 providing for the sale of stock of any stockholder delinquent under its terms, it is provided that if such stock be sold at private sale and the price offered by any nonstockholder shall not exceed the highest bid of any stockholder, then such stock shall be sold to the stockholder. Eligibility of a purchaser at public sale is not specifically stated, but the whole section indicates a sale to the highest bidder. This section indicates lack of power in the stockholders or the board of directors of a bank to adopt either the amendments to the charter or to the bylaws.

The bank also presents some argument tending to show that the amendments to the charter and the bylaws were necessary to the continued prosperity of the bank and the community which it serves, and that plaintiff and her nominees should have no difficulty in meeting the requirements made. We shall not discuss motives, good faith or the possibility of compliance, for they are not determinative of the issues presented. A somewhat similar argument in *Steele v. Telephone Association,* supra, was not considered a defense.

The bank also contends that the plaintiff had an adequate remedy at law and that she was not entitled to a writ of mandamus. In our opinion plaintiff did not have an adequate remedy at law. One of the bylaws demanded that she surrender the certificates of stock and accept others containing the restrictive provisions as a condition precedent to being entitled to dividends. Although perhaps not so intended, another required that she offer her shares to the board, presumably as a gift, before she could give them to her children. Another restricted the right of beneficiaries under her will, if she bequeathed the stock. If she surrendered the present certificates and accepted new ones, she probably would have waived objections. If she did not, and attempted a suit for damages, she would be confronted with great difficulty in establishing the amount thereof, in addition to which she would ultimately lose her stock, a thing she evidently did not desire to do.

In *Bank v. Price,* supra, which was a suit in equity to compel a transfer of stock, the defendant urged that plaintiff's remedy was an action for damages rather than the relief sought. This court denied the contention, stating that the courts had recognized plaintiff's right to maintain a suit in equity or an action of mandamus. In the course of its opinion the court said:

"It needs no witness to testify that the stock of small interior banks of this state is not found listed in general market reports. Nor is such stock a current commercial commodity in the locality where the bank is situated. Its real value depends upon many fluctuating factors which can not be established in dollars and cents. The book value is rarely, if ever, the actual value, and the consideration of sales is determined by the needs and desires of seller and purchaser rather than by any market or other standard of price. Besides this, the ownership of such stock is attended with certain well-recognized privileges and advantages, which enhance its value but which are not measurable in money. Therefore there is no fair or just way of arriving at the actual pecuniary damages a party would suffer if deprived of the registration of his stock. Beyond this, however, such stock has peculiar characteristics of its own which make it specially desirable. It gives the owner the right to be admitted into

the corporation, to share in its government, and to participate in the exercise of its franchises. It is idle to say that he can take damage money and go out and possess himself of an equal number of shares of the same stock. If he could the bank might not allow them to be transferred. It is just as idle to say that he can satisfy his desires with other shares of other stock equally as good. Therefore it is not only inequitable and unjust that a shareholder should be compelled, at the caprice of the bank, which has no rights of its own in the premises, to market stock which he has just purchased, but the remedy at law for a refusal to register a transfer is inadequate." (l. c. 293.)

In *Steele v. Telephone Association*, supra, which was an original proceeding in mandamus in this court, the question of another remedy is not discussed. In that case the writ was allowed.

We conclude that the bank's contention, that the writ should have been denied because the plaintiff had an adequate remedy at law for damages, cannot be sustained.

We do not find it necessary to discuss appellee's separate contentions that the amendments constitute unlawful discriminations in violation of section 17 of the bill of rights of our state constitution, or unlawful restraints of trade and of free alienation of property, that they are in violation of public policy, or that they deprive her of her property without due process of law in violation of the fourteenth amendment of the constitution of the United States.

We conclude that the trial court did not err in overruling the bank's motion to quash the alternative writ of mandamus, and that the ruling should be, and it is, affirmed.

SMITH, J., not participating.